NOT DESIGNATED FOR PUBLICATION

No. 116,291

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TYSON FISHER,
*Appellant*,
and
I.D., a Minor Child, by and Through His Next Friend,

v.

HILLARY DAVIS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; ROBERT J. WONNELL, judge. Opinion filed May 5, 2017. Reversed and remanded with directions.

*Michaela Shelton*, of Shelton Law Office, P.A., of Overland Park, for appellant.

*Joseph W. Booth*, of Lenexa, and *Richard Michael Latimer*, of Overland Park, for appellee.

Before ARNOLD-BURGER, C.J., BUSER and POWELL, JJ.

*Per Curiam*: K.S.A. 2016 Supp. 60-260(b) allows a party to request relief from a final judgment. A home paternity test showed that Tyson Fisher was I.D.'s father so Fisher went to court and agreed to a journal entry of paternity. Several days after the determination of paternity, Fisher conducted a second home paternity test that showed that he was not I.D.'s father. Fisher filed a timely K.S.A. 2016 Supp. 60-260 motion requesting that the district court set aside the journal entry of paternity and order genetic testing. The district court denied Fisher's motion, holding that he was "not entitled to a second bite at the apple." The district court's holding constituted an abuse of discretion.

1

Fisher also argues that he appealed the underlying journal entry of paternity. But, his notice of appeal is not timely or sufficient as to the journal entry of paternity so this court is without jurisdiction to address it. Finally, Davis' appellate counsel made a request for attorney fees. Because Davis' arguments on appeal were not persuasive, her request is denied.

FACTUAL AND PROCEDURAL HISTORY

Hillary Davis gave birth to I.D. on December 4, 2013. There was no voluntary acknowledgment of paternity (VAP) form, as provided under K.S.A. 2016 Supp. 23-2204, signed at the time of the birth, and no father was listed on the birth certificate. On September 28, 2015, Fisher petitioned the district court for a determination of paternity in which he claimed, by court affidavit, to be I.D.'s natural father. At a status conference on November 24, 2015, at which both parties appeared pro se, Fisher explained that about a year after I.D.'s birth, a home paternity test showed that Fisher was I.D.'s father. Fisher initiated the paternity action after the DNA test to make his relationship with I.D. "more legal." Fisher and Davis both swore under oath at the proceeding that Fisher was I.D.'s natural father. The district judge told Fisher and Davis to prepare a journal entry, parenting plan, and proposed child support agreement before the disposition hearing.

The district court held the disposition hearing on January 25, 2016. Both parties appeared pro se. Fisher again testified that he was I.D.'s natural biological father. Davis agreed that Fisher was the father, despite Fisher's name not appearing on I.D.'s birth certificate. Other than the statements of the parties, no paternity test results were admitted into evidence. The court granted Fisher's petition, naming him father of I.D. based upon his sworn statement. The court approved the parties' child support agreement and parenting plan, finding that the agreements were in the best interests of the child. The court ordered that a new birth certificate be issued showing Fisher as I.D.'s father. Finally, the court granted Davis and Fisher joint legal custody. I.D. would live full time

2

with Davis, but Fisher would visit I.D. three times a week for 2 hours each visit. The court noted that Fisher's time would "likely need to increase" as I.D. grew up and integration progressed. These findings were enshrined in a journal entry of paternity filed the same day as the hearing.

Fisher filed a motion to set aside the journal entry of paternity 31 days later, on February 25, 2016. Fisher argued that he had agreed to the journal entry of paternity based on the results of the home paternity test conducted by GTLDNA Genetic Testing Laboratories. However, Fisher obtained a second home paternity test from Identigene and the results showed that he was not I.D.'s biological father. Fisher argued that, pursuant to K.S.A. 2016 Supp. 60-260, he was "entitled to have the Journal Entry of Paternity set aside based upon mistake, and the probability that [Fisher] is not the biological father of [I.D.]" Fisher requested that the court order an expert DNA analysis.

The district court heard the motion on June 6, 2016. Following the parties' arguments, the court denied Fisher's motion. The court noted that Fisher could have requested a second paternity test before the journal entry of paternity was final. The journal entry denying Fisher's motion stated the court's findings:

"1. The Court denies Petitioner's Motion for Relief, treating Petitioner's Motion as a
     motion for relief under K.S.A. 60-260.
"2. The Court further finds that Petitioner had every opportunity to object to paternity
     prior to the entry of the Journal Entry of Paternity on January [25], 2016, and therefore
     is not entitled to a second bite at the apple.
"3. The Journal Entry of January [25], 2016 is affirmed as it stands."

Fisher appealed "from the Journal Entry filed on July 6, 2016," which is the journal entry denying his motion to set aside the judgement.

3

*The district court erred by denying Fisher's motion to set aside the journal entry of paternity.*

Fisher argues that the district court erred by denying his K.S.A. 2016 Supp. 60-260 motion to set aside the journal entry of paternity. A district court's ruling on a motion for relief from judgment filed pursuant to K.S.A. 2016 Supp. 60-260(b) is reviewed for abuse of discretion. *In re Marriage of Leedy*, 279 Kan. 311, 314, 109 P.3d 1130 (2005). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015). Fisher argues that the district court abused its discretion by making an error of law and by taking a view that no reasonable person would adopt. We agree for the reasons that follow.

*The District Court Made an Error of Law.*

Fisher's first argument is that the district court made an error of law by denying his motion and failing to order further genetic testing. Fisher argues that "the trial court was mistaken about its own authority" because it "believed it could not reconsider its prior findings on the grounds that once a judgment is final, it must remain final."

The district court's reasoning for denying Fisher's motion to set aside, as memorialized in the journal entry, was that Fisher "had every opportunity to object to paternity prior to the entry of the Journal Entry of Paternity on January 26, 2016, and therefore is not entitled to a second bite at the apple." When orally ruling on the motion, the district judge further explained:

4

"The question that's being presented right now is not a question of equitable relief. It's not a question of any principle of equity or what some person thinks [is] right or wrong. It is a legal determination.

"We have a journal entry. We have a motion under [K.S.A. 60-260] for relief of journal entry. I have gone through that, and the request for relief under [K.S.A. 60-260] is denied . . . .

"The Supreme Court gave us a case, *In [re] Adoption of [A.A.T.*, 287 Kan. 590, 196 P.3d 1180 (2008), *cert. denied* 556 U.S. 1184 (2009)], where a father was convinced by fraud from the mother that he was not the dad and believed that, and someone else adopted the child. And he came back and he realized that he had been deceived, there had been fraud, and he asked the court [to] set aside that adoption, and the court said no. The court said we have to have finality in judgments. The court said that every litigant when they're pro se or represented has a duty to protect their legal interests.

"This request could have been made before the final journal entry. Because of that, because we have to have finality of judgments, because this is in effect a request for the second bite of the apple, the request is denied."

The district court is correct that K.S.A. 2016 Supp. 60-260(b)(2) permits relief from a final judgment if there is "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under [K.S.A. 2016 Supp. 60-259(b)]." Had Fisher exercised reasonable diligence, he would have completed the second home test before going to court and requesting a journal entry of paternity. However, he did not. So, the district court was faced with conflicting home paternity tests—neither of which were admitted into evidence. Accordingly, the district court could either grant a request for independent genetic testing or deny his request and lock Fisher into parenting obligations for a child that might not be his. The district court chose to deny the request because of the importance of the finality of judgments.

5

But the court did not consider K.S.A. 2016 Supp. 60-260(b)(6) which permits relief from a final judgment for "any . . . reason that justifies relief." "When determining whether to grant relief under 60-260(b)(6)," a court must "balance the need for finality in litigation against the need for substantial justice under all the circumstances." *Vogeler v. Owen*, 243 Kan. 682, 687-88, 763 P.2d 600 (1988). The district court made an error of law when it held that finality of judgments precluded it from granting Fisher relief. While a district court should "'[give] due regard to the sound interest underlying the finality of judgments, the district court, nevertheless, has power to grant relief from a judgment whenever, under all the surrounding circumstances, such action is appropriate in the furtherance of justice.'" *Wirt v. Esrey*, 233 Kan. 300, 311, 662 P.2d 1238 (1983) (quoting 7 Moore's Federal Practice, ¶ 60.27[1], p. 342 [2d ed. 1982]); see also *Wilson v. Wilson*, 16 Kan. App. 2d 651, 655, 827 P.2d 788 (1992) ("K.S.A. 60-260[b] is the proper vehicle for modification of a final judgment of a trial court.").

In hanging its hat on the importance of finality, the district court relied on *In re Adoption of A.A.T.* in its ruling, but its reliance on the case is misplaced. In that case, disturbing a final judgment would not have served the interests of justice. There, N.T. told M.P. that she was pregnant with his child while they were both living in New York. N.T. then moved to Kansas and falsely informed M.P. that she got an abortion. In fact, N.T. gave birth to a child, A.A.T., and gave the child up for adoption. The parties remained in contact by phone, and "M.P. continued to question N.T. about the pregnancy, doubting her veracity." 287 Kan. at 593. N.T. lied about who the biological father was during the adoption process, so M.P. never became aware of the adoption proceedings and his parental rights were terminated. Several months later, N.T. told M.P. the truth. M.P. retained counsel in Kansas and filed a motion to set aside the adoption pursuant to K.S.A. 60-260(b). The district court denied M.P.'s motion, finding that M.P. suspected that N.T. was lying to him so he "'should have taken action to determine whether [N.T.] had had an abortion or was still pregnant . . . and . . . gave birth to his child.'" 287 Kan. at 596. M.P. appealed, and his appeal was transferred to the Kansas Supreme Court.

6

The Kansas Supreme Court affirmed the district court. 287 Kan. at 592. One of M.P.'s arguments was that the adoption was void under K.S.A. 60-260(b)(4) because he was not provided with notice of the adoption proceeding in violation of his constitutionally protected due process liberty interest in raising the child. The court reviewed caselaw on how a putative father can establish a liberty interest that affords him the right to notice of proceedings to adopt his newborn child. Generally, a father has such a right if he: "(1) diligently took affirmative action that manifested a full commitment to parenting responsibilities and (2) did so during the pregnancy and within a short time after he discovered or reasonably should have discovered that the biological mother was pregnant with his child." 287 Kan. at 609. The court also noted that, while fathers may have due process interests in their children, "the finalization of an adoption gives rise to a legal relationship between the adoptive parents and the child, creating liberty interests." 287 Kan. at 612. The court stated that M.P.'s "position create[d] a tension with the rights of the adoptive family and the State because voiding the adoption would be in derogation of the matured rights of the State and the adoptive family." 287 Kan. at 626. Ultimately, the court held that "[t]he interests of the State and the adoptive family justify a conclusion that M.P.'s opportunity to demonstrate his commitment to parenting passed without developing into a liberty interest." 287 Kan. at 626.

Fisher's situation is clearly distinguishable from *In re Adoption of A.A.T.* There, the fact that the adoption had been finalized was important because it bestowed due process rights upon the adoptive parents that clashed with the rights that M.P. was claiming. When the *In re Adoption of A.A.T.* court balanced the need for finality of judgments against the interests of justice, the balance tipped towards honoring the final judgment because failure to do so would extinguish adoptive parents' rights.

We find that the district court made an error of law when it wholly failed to balance the need for finality of judgments against the interests of justice.

*The District Court's Decision Was Not Reasonable.*

Even if we assume the district court did balance the need for finality of judgments against the interests of justice, its conclusion was not reasonable.

Davis contends that the district court's decision was reasonable because biology is not important to determining paternity. She relies on *Guth v. Wagner*, No. 103,398, 2010 WL 2978091 (Kan. App. 2010) (unpublished opinion), in support of her argument. But we disagree with such a characterization of *Guth*. Genetics was not the deciding factor in that case.

*Guth* involved a dispute between Travis Guth and Travis Conrad, both of whom claimed to be T.R.C.'s father. Conrad was in a long-term relationship with T.R.C.'s mother when she gave birth. Conrad's name was on the birth certificate, and he held himself out as T.R.C.'s father. Approximately a year later, the mother and Guth performed a home paternity test with a kit they purchased at Walgreens which showed that Guth was the father. Guth petitioned the district court requesting that it determine T.R.C.'s paternity. The district court ordered a DNA test. But, after holding a hearing pursuant to *In re Marriage of Ross*, 245 Kan. 591, 602, 783 P.2d 331 (1989), often termed a *Ross* hearing, the court concluded that it was in T.R.C.'s best interests not to reveal the results of the court-ordered DNA test and that it was error to order one before conducting the *Ross* hearing. The Court of Appeals affirmed the district court. *Guth*, 2010 WL 2978091, at *1.

A *Ross* hearing is a hearing at which a district court determines if it is in the best interests of a child to order a blood test to determine whether a presumed father is also a biological father. *Ross* hearings are required when the district court is faced with the possibility of shifting paternity from a presumed father to a man purporting to be a biological father. *In re Marriage of Ross*, 245 Kan. at 602. However, the "best-interests-

8

of-the-child determination is not a condition precedent to the district court ordering a blood test for a man claiming to be the child's biological father where no legally presumed father exists, *i.e.*, where there is no possibility of shifting paternity from a presumed father to a biological father." *In re Adoption of A.A.T.*, 42 Kan. App. 2d. 1, Syl. ¶ 5, 210 P.3d 640 (2006), *aff'd* 287 Kan. 590, 196 P.3d 1180 (2008). In Fisher's situation, there is no possibility that paternity could be shifted from the presumed father to a biological father because Fisher is the only purported father. Furthermore, one of the policies behind the *Ross* decision was that "a child born during a marriage should not be bastardized." *Ross*, 245 Kan. at 601. Here, I.D. was not born during a marriage so granting Fisher's request for a paternity test will not delegitimize I.D.

Another reason genetics was not as important in *Guth* as it is in the present situation is that in *Guth* the presumed father, Conrad, was in a long-term intimate relationship with the child's mother. Conrad's name was on the child's birth certificate and Conrad had always held himself out to be the child's father. Conrad's relationship with the child was not based on biology alone. Granting Guth's request for paternity testing would have disrupted the preexisting relationship between Conrad and T.R.C. Unlike Conrad, Fisher does not have an extensive relationship with I.D. Fisher only became involved in I.D.'s life when I.D. was 1 year old and Fisher received the results from the first home paternity test. Fisher's interaction with I.D. was limited to three nights a week. The accurate determination of paternity is the foundation upon which Fisher's obligation towards I.D. arises. Granting Fisher's request would not disrupt a preexisting relationship between I.D. and another man acting as I.D.'s father.

Davis' argument that genetics are not important is also contrary to Kansas caselaw. See *Ross*, 245 Kan. at 597 (recognizing that "every child has an interest not only in obtaining support, but also in inheritance rights, family bonds, and *accurate identification of his parentage* [emphasis added]"); *State ex rel. Secretary of SRS v. Kimbrel*, 43 Kan. App. 2d 790, 793, 231 P.3d 576 (2010) (noting that the Kansas Parentage Act definition

9

of "parent and child relationship" "shows a legislative intent to recognize biological lineage as the foundation for the parent-child relationship"); *In re D.B.S.*, 20 Kan. App. 2d 438, 457, 888 P.2d 875, *aff'd* 258 Kan. 396, 903 P.2d 1345 (1995) (stating that a child has a "basic interest in simply knowing who his or her biological father is"). While genetics are generally relevant in parentage proceedings, they are especially relevant in Fisher's case because his only basis for going to court and requesting the journal entry of paternity was his belief, based on the home paternity test, that he was I.D.'s biological father. Thus, Davis' argument that genetics are irrelevant is unpersuasive.

Alternatively, Davis argues that granting Fisher's motion to set aside the journal entry of paternity would violate I.D.'s constitutional rights. She relies on *Frazier v. Goudschaal*, 296 Kan. 730, 754, 295 P.3d 542 (2013), for the proposition that "[d]enying the children an opportunity to have two parents, the same as children of a traditional marriage, impinges upon the children's constitutional rights." However, Davis' reliance on *Frazier* is misplaced and the case does not support her argument.

*Frazier* dealt with the enforceability of a coparenting agreement made between Kelly Goudschaal and Marci Frazier. Goudschaal and Frazier initiated a same-sex relationship in 1995. The couple "jointly decided to have two children via artificial insemination." 296 Kan. at 732. Goudschaal gave birth to both children but signed a coparenting agreement with Frazier in which the parties agreed "'to jointly and equally share parental responsibility.'" 296 Kan. at 733. The parties' relationship deteriorated, and by January 2008 Goudschaal moved out of the home, though the parties continued to share parenting responsibilities. By July 2008, Goudschaal began limiting Frazier's contact with the children and informed Frazier that she intended to move to Texas. Frazier filed a petition to enforce the coparenting agreement. The district court granted Frazier joint custody and reasonable parenting time and ordered her to pay child support. Goudschaal appealed.

10

Goudschaal's "overarching complaint . . . [was] that the district court violated Goudschaal's constitutionally protected parental rights when it awarded joint custody and parenting time to a nonparent, *i.e.*, Frazier." 296 Kan. at 736. One of Goudschaal's arguments was that enforcement of the coparenting agreement was contrary to public policy because it would violate her fundamental due process right to make decisions regarding the care, custody, and control of her children. The Kansas Supreme Court recognized the rights of parents, but said:

"If a parent has a constitutional right to make the decisions regarding the care, custody, and control of his or her children, free of government interference, then that parent should have the right to enter into a coparenting agreement to share custody with another without having the government interfere by nullifying that agreement, so long as it is in the best interests of the children." 296 Kan. at 753.

The court then found that it was in the best interests of the children to enforce the coparenting agreement. 296 Kan. at 755. One of the reasons for enforcing the coparenting agreement was that without the coparenting agreement, the children would be left with only one parent because K.S.A. 38-1114(f) (now codified at K.S.A. 2016 Supp. 23-2208[f]) stated that semen donors are not legally treated as birth fathers. 296 Kan. at 754. It was then that the court made the statement upon which Davis relies: "Denying the children an opportunity to have two parents, the same as children of a traditional marriage, impinges upon the children's constitutional rights." 296 Kan. at 754.

By holding that the Kansas Parentage Act permits both parents to be of the same sex, the court ensured that children of same sex couples are afforded the same opportunity to have two parents as children born to married couples (which at that time in Kansas would only be heterosexual couples). Here, the issues have nothing to do with Fisher and Davis' marital status. Ordering a genetic test would not deny I.D. the "opportunity to have two parents." *Frazier*, 296 Kan. at 754. I.D. has always had the opportunity to have two parents—nothing in the law prevented Davis from bringing a

11

paternity action against any man who may be I.D.'s father. In *Frazier*, the fact that the mothers used a sperm donor meant that there could be no biological father, thus leaving the children with only one person who was legally considered a biological parent. 296 Kan. at 754.

Davis also makes the argument that Fisher has no evidence that the district court abused its discretion because home paternity tests are inadmissible as evidence in court. Davis is correct that a home paternity test would likely not meet the standards of admissibility to prove that a man is or is not a child's father. See *Guth*, 2010 WL 2978091, at *8. However, Fisher was not relying on the second paternity test to argue that he was not I.D.'s father. Fisher was relying on the second paternity test as a basis for the court to grant his request to relieve him from the journal entry of paternity until expert genetic testing could be conducted. The expert genetic testing could then "determine once and for all whether or not [Fisher] was in fact the biological father."

Clearly, Fisher signed an affidavit acknowledging paternity and that was the basis for clear and convincing evidence that Fisher was the father. But just a few weeks after the judgment was entered Fisher obtained information that put his acknowledgment in question. If evidence proves a man who has executed an acknowledgment of paternity is not the biological father of the child, "the court may find the presumption of paternity is rebutted, end the father-child relationship, and deny a petition for child support." *Kimbrel*, 43 Kan. App. 2d at 798-99. Fisher brought the appropriate action before the court to reopen the case so that he could ask the court to order genetic testing to clear up any question as to his parenthood. This was not an action brought several years after his paternity was determined and a longstanding relationship had developed with the child. Moreover, it is important to note, that this was not an action to revoke a VAP, as our Supreme Court recently addressed in *State ex rel. Secretary of DCF v. Smith*, 306 Kan. ___, ___ P.3d ___ (No. 114,306, filed April 7, 2017). This was an action brought within a few weeks of the final order simply to grant relief from that order and reopen the case.

12

There is no indication that his motion was filed for any other reason than to clearly determine if he was the biological father of I.D.

The district judge seemed to recognize the inequity of dismissing Fisher's motion to set aside the journal entry of paternity. Before ruling on Fisher's motion, the district judge questioned Davis' attorney. The judge asked: "[W]hat about general principles of equity of having a person potentially being obligated for support for an entire life of a child who may not be the father?" Davis' attorney responded that if Fisher was the father, he was obligated to support the child, and if Fisher was not the father, then he had "no obligation to support the child." The judge responded that "if the decree stands, then [Fisher] has an obligation to support even if he's not the father." Davis' attorney answered, "Well, I don't know exactly how to respond to that. If he's not the father, he doesn't have the obligation to support the child. Period." Despite this exchange, the district court concluded that Fisher was not "entitled to a second bite at the apple." This conclusion was also an abuse of discretion because it was unreasonable.

*Conclusion*

Insofar as the district court held that it could not entertain Fisher's claim due to finality of judgments, the district court made a legal error because K.S.A. 2016 Supp. 60-260 provides a way to amend final judgments. K.S.A. 2016 Supp. 60-260(b)(6) "may afford relief under appropriate circumstances where the scales of justice tilt in favor of the movant." *Vogeler*, 243 Kan. at 687. The district court should have balanced the need for finality of judgments with the need for justice under the unique circumstances presented by the two conflicting home paternity tests.

In this case, the scales of justice tilt in favor of Fisher. This is not a case like *In re Adoption of A.A.T.*, where the rights of the adoptive parents tipped the balance against disrupting a final judgment. This is not a case like *Guth*, where the dedication of the

13

presumed father, Conrad, tipped the balance against disrupting a final judgment. This is not a case, like *Guth* or *Frazier*, where the biological component of parenthood is overshadowed by other considerations. Biology is the basis upon which Fisher initiated his paternity action, and when Fisher testified that he was I.D.'s father he did so because he was relying on a home paternity test that told him that he was I.D.'s father. In this case, when balancing the need for finality in litigation against the need for substantial justice, the interests of justice prevail.

*Fisher did not appeal the January 25, 2016, journal entry of paternity.*

Fisher argues that he appealed the rulings from both the January 25, 2016, journal entry of paternity and the July 6, 2016, journal entry denying his motion to set aside. Whether jurisdiction exists for us to consider this an appeal of the entire paternity action is a question of law over which this court exercises unlimited review. *Fuller v. State*, 303 Kan. 478, 492, 363 P.3d 373 (2015).

Generally, an appeal must be taken within 30 days after an entry of judgment. K.S.A. 2016 Supp. 60-2103(a). The notice of appeal here was not filed until July 18, 2016, well in excess of 30 days after the January journal entry of paternity. The 30-day limit is tolled if a party makes certain timely posttrial motions. K.S.A. 2016 Supp. 60-2103(a). A K.S.A. 2016 Supp. 60-259 motion to alter or amend will toll the time limit, but a K.S.A. 2016 Supp. 60-260 motion for relief from judgment will not. K.S.A. 2016 Supp. 60-2103(a). Moreover, a motion to alter or amend must be filed within 28 days after the entry of judgement. K.S.A. 2016 Supp. 60-259(f). Accordingly, for Fisher to have filed a timely appeal of the January 25, 2016, journal entry of paternity, this court must construe his motion as a motion to alter or amend the judgment under K.S.A. 2016 Supp. 60-259 and find that such motion was timely even though it was filed in excess of 28 days after the entry of judgment. That is exactly what Fisher asks us to do. We decline to do so and summarize our rationale as follows.

14

First, Fisher acknowledges that he "labeled and argued his motion at the hearing under the provisions of K.S.A. 60-260." He never argued the application of K.S.A. 2016 Supp. 60-259 to the district court.

Second, although "the content of the motion, not the heading, determines the type of motion . . . ." *Bank of America v. Inda*, 48 Kan. App. 2d 658, 662, 303 P.3d 696 (2013), the content of Fisher's motion could not be construed as a motion under K.S.A. 2016 Supp. 60-259. The substance of Fisher's argument is that the conflicting home paternity tests call into question the validity of Fisher's basis for testifying that he was I.D.'s father, and that the court should set aside its order of paternity and order a genetic test to clear up the confusion. This argument does not fit into any of the six reasons that would justify granting a new trial under K.S.A. 2016 Supp. 60-259. In support, we examine the six statutory reasons for granting a new trial.

To begin, K.S.A. 2016 Supp. 60-259(a)(1)(A) allows a new trial if there is "[a]buse of discretion by the court, misconduct by the jury or an opposing party, accident or surprise that ordinary prudence could not have guarded against, or because the party was not afforded a reasonable opportunity to present its evidence and be heard on the merits of the case." There are no allegations that the district court abused its discretion when it accepted Fisher's testimony that he was I.D.'s father. There are also no allegations of misconduct, or that Fisher was not provided with an opportunity to present evidence at the disposition hearing. While the results of the second home paternity test may have been a surprise to Fisher, they were not a surprise that ordinary prudence could not have guarded against. Fisher could have conducted a second home test before acknowledging paternity. Alternatively, Fisher could have asked the court to order an official genetic test under K.S.A. 2016 Supp. 23-2212.

15

Next, K.S.A. 2016 Supp. 60-259(a)(1)(B) allows a new trial if there are erroneous rulings or instructions by the court. Fisher did not argue that the court's ruling was erroneous. Fisher's argument is that he was the one who made the error.

In addition, K.S.A. 2016 Supp. 60-259(a)(1)(C) is inapplicable because Fisher did not argue that the verdict was given under the influence of passion or prejudice. Similarly, K.S.A. 2016 Supp. 60-259(a)(1)(D) is inapplicable because Fisher did not argue that the verdict was contrary to the evidence presented at the disposition hearing. And, K.S.A. 2016 Supp. 60-259(a)(1)(F) is inapplicable because Fisher does not allege corruption.

And finally, K.S.A. 2016 Supp. 60-259(a)(1)(E) permits a new trial when there is "newly discovered evidence that is material for the moving party which it could not, with reasonable diligence, have discovered and produced at the trial . . . ." Fisher does argue that his motion should have been construed as a motion to set aside based on newly discovered evidence. But, Fisher failed to provide this court or the district court with a reason that he could not have conducted another paternity test before agreeing to the journal entry of paternity. Because Fisher cannot explain his failure to exercise reasonable diligence, K.S.A. 2016 Supp. 60-259(a)(1)(E) could not support his claim for relief.

Third, even we accept Fisher's argument that he made a timely K.S.A. 2016 Supp. 60-259 motion because he was not properly served with the judgment, Fisher's notice of appeal was insufficient. K.S.A. 2016 Supp. 60-2103(b) states that a notice of appeal "shall designate the judgment or part thereof appealed from . . . ." Fisher's notice of appeal was terse and specific. It stated: "NOTICE is given that Plaintiff, Tyson Fisher, appeals from the Journal Entry *filed on July 6, 2016* (doc. 18), to the Court of Appeals of the State of Kansas." (Emphasis added.) While this notice is clearly sufficient to appeal

16

the July 6, 2016, journal entry, it is not sufficient to appeal the journal entry of paternity entered on January 25, 2016.

The notice of appeal does not include any catch-all language that would include court orders leading up to the July 6, 2016, journal entry. Davis also alerts us that even the docketing statement is "devoid of any indication that the Journal Entry of Paternity was under appeal, even in the non-binding sections." Fisher claims that because the July 6 order specifically identified and referenced the January 25, 2016, order the notice of appeal was sufficient. We are not persuaded.

Fisher is referring to the comment in the July 6, 2016, journal entry that states "[t]he Court further finds that the Petitioner had every opportunity to object to paternity prior to the entry of the Journal Entry of Paternity on January 25, 2016, and therefore is not entitled to a second bite at the apple." Fisher is trying to widen the scope of his appeal to include the January 25, 2016, paternity ruling that was finalized months before the July 6, 2016, journal entry. This is analogous to the situation in *Gates v. Goodyear*, 37 Kan. App. 2d 623, 155 P.3d 1196 (2007).

*Gates* involved a dispute between a landlord and his tenants. In August 2005, the district court found that the landlord's actions constituted conversion, that the conversion justified punitive damages, and that there were no lien rights. These holdings were memorialized in a journal entry dated August 19, 2005. In a November hearing, the district court settled issues related to punitive damages and issued a journal entry on November 29, 2005. On appeal, Gates attempted to appeal the conversion and lien findings, as well as the punitive damages. This court held that it was without jurisdiction to address the first two issues that the landlord raised because his notice of appeal did not make reference to the August rulings. 37 Kan. App. 2d at 629. The court ruled:

17

"[The landlord] clearly omitted any designation of the August findings, conclusions, or judgments in his notice of appeal and designated with specificity only the November 19 judgment. No catch-all language was utilized in this notice, and there was no reasonable manner that [the landlord] could have believed the November proceedings included any reiteration or finalization of the August findings and conclusions. If we were to hold that the notice of appeal is sufficient under these circumstances, we would adjudicate out of existence the statutory mandate that a notice of appeal 'shall designate' the judgment appealed from." 37 Kan. App. 2d at 629.

Like in *Gates*, Fisher's notice of appeal only references one order despite Fisher's attempt to raise issues that were finalized in a prior order. See also *In re N.U.*, 52 Kan. App. 2d 561, 567, 369 P.3d 984 (2016) (notice of appeal insufficient because Father did not indicate he was appealing from a prior order).

In sum, Fisher wants to appeal the January 25, 2016, journal entry of paternity. But, his notice of appeal did not designate the journal entry of paternity as a judgment from which Fisher was appealing. Furthermore, in order for Fisher's notice of appeal to be timely as to the journal entry of paternity, this court would have to construe his K.S.A. 2016 Supp. 60-260 motion as a K.S.A. 2016 Supp. 60-259 motion, which would be inappropriate as the issue Fisher raised in the motion was properly brought under K.S.A. 2016 Supp. 60-260.

Finally, even if Fisher had properly appealed the journal entry of paternity, he would not be entitled to relief. While Fisher's brief contains many arguments that this court has jurisdiction to review the journal entry of paternity, it is devoid of arguments that the journal entry of paternity constituted an abuse of discretion. The brief is focused on whether the district court abused its discretion in denying Fisher's motion to set aside the journal entry of paternity. An issue not briefed is deemed waived or abandoned. *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011).

18

*Attorney fees are not appropriate in this case.*

Davis filed a motion and affidavit for appellate attorney's fees in the amount of $7,185 under Supreme Court Rule 7.07 (2017 Kan. S. Ct. R. 50). This court "may award attorney fees for services on appeal in a case in which the district court had authority to award attorney fees." Supreme Court Rule 7.07(b)(1) (2017 Kan. S. Ct. R. 51). Moreover, K.S.A. 2016 Supp. 23-2216(a) gives the district court the authority to award costs and attorney fees "to either party as justice and equity may require" in actions brought under the Kansas Parentage Act.

Fisher argues that, while K.S.A. 2016 Supp. 23-2216 permits the district court to award attorney fees for the underlying paternity action, it does not authorize an award of appellate attorney fees. But Supreme Court Rule 7.07(b) does, and we have found that to be sufficient. See *In re Marriage of Sinks*, No. 114,609, 2016 WL 3961479, at *11 (Kan. App. 2011) (unpublished opinion) (considering a request for attorney fees despite the fact that the statute authorizing the district court to award attorney fees does not mention appellate attorney fees).

This court is generally hesitant to award appellate attorney fees to a party that does not fully prevail on appeal. See *In re Marriage of Knoll*, 52 Kan. App. 2d 930, 942, 381 P.3d 490 (2016) ("We note, however, that Dean has prevailed on all the relevant issues in this appeal. As a result, we see no reason to saddle Dean with Melissa's attorney fees."); *In re Marriage of Clark*, No. 109,422, 2013 WL 6063227, at *6 (Kan. App. 2013) (unpublished opinion) (denying appellant's motion for attorney fees despite the fact that she was partially successful on appeal); *Wolfert Landscaping Co. v. LRM Industries, Inc.*, No. 106,989, 2012 WL 5392143, at *6 (Kan. App. 2012) (unpublished opinion) ("LRM has only received part of the relief it requested on appeal and, under these circumstances, we find that it would be appropriate for each party to pay its own attorney fees."). Given

19

that Davis did not prevail on appeal, equity and justice do not require that Fisher pay Davis' appellate attorney fees.

*Conclusion*

In sum, we find that Frazier only appealed the district court's denial of his motion for relief from judgment under K.S.A. 2016 Supp. 60-260. Furthermore, we find that the district court abused its discretion when it denied his motion based upon the overarching principle of the finality of judgments. This was an error of law. K.S.A. 2016 Supp. 60-260(b)(6) permits relief from a final judgment for "any . . . reason that justifies relief." The court was required to determine whether the unique circumstances presented by the two conflicting home paternity tests justified relief from the judgment and an order for genetic testing. If the district court, in its somewhat confusing statements from the bench, intended to find that justice did not require relief from judgment, that decision was also an abuse of discretion because it was clearly unreasonable. Accordingly, we reverse the district court's denial of Frazier's motion for relief from judgment and remand the case to the district court to order genetic testing. Finally, because Davis did not prevail on appeal, we deny Davis' request for appellate attorney fees.

Reversed and remanded with directions.