No. 114,161

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of:
N.U., DOB: 2003, Sex: F.


SYLLABUS BY THE COURT

1.

Kansas district courts have original jurisdiction of all matters that a court might properly address, whether civil or criminal, unless otherwise provided by law. The Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA), at K.S.A. 2015 Supp. 23-37,101 *et seq.*, is a limitation provided by law on the subject matter jurisdiction of the Kansas district courts.


2.

The UCCJEA applies to child in need of care proceedings under the Revised Kansas Code for Care of Children. Accordingly, a Kansas court errs by exercising subject matter jurisdiction over a child in need of care case concerning a child subject to a previous child custody determination made by a court of another state without complying with the provisions of the UCCJEA.


3.

Emergency jurisdiction under the UCCJEA is intended to be temporary in nature and, unless a child has been abandoned, requires the existence of an actual emergency requiring immediate court intervention. A finding that a child is in need of care under the Revised Kansas Code for Care of Children is not sufficient, by itself, to support the exercise of emergency jurisdiction under the UCCJEA.

4.

When a Kansas court assumes temporary emergency jurisdiction over a child in need of care case under the UCCJEA, the Kansas court must place a limit on the duration of its temporary emergency jurisdiction in the order assuming jurisdiction. The UCCJEA provides that the order must specify a period of time that the Kansas court considers adequate to allow the person seeking a change of jurisdiction from the child's home state to Kansas to obtain such an order.

5.

The UCCJEA provides that a temporary emergency order remains in effect until the necessary order is obtained from the child's home state within the period specified by the court or the period expires. If the period expires before the necessary order permitting Kansas to exercise jurisdiction is obtained from the home state, Kansas loses its temporary emergency jurisdiction. Because the Kansas court otherwise lacks subject matter jurisdiction, it must dismiss the case.

Appeal from Ford District Court; VAN Z. HAMPTON, judge. Opinion filed March 11, 2016. Reversed and case dismissed.

*Terry J. Malone*, of Williams-Malone, P.A., of Dodge City, for appellant father.

*Kathleen Neff*, assistant county attorney, for appellee.

Before BRUNS, P.J., MCANANY, J., and JOHNSON, S.J.

JOHNSON, J.:  J.U. (father) appeals from an order entered by the Ford County District Court in the child in need of care (CINC) case concerning N.U., the daughter of J.U. and C.B. (mother). Recognizing that N.U.'s home state was Nebraska where J.U. still resided, on January 5, 2015, the district court exercised temporary emergency jurisdiction over N.U. pursuant to K.S.A. 2015 Supp. 23-37,204(a), found that N.U. was a CINC,

2

placed her with mother (a Kansas resident), and stated that its CINC order would "remain in force for a period of 6 mos., pursuant to K.S.A. 23-37,204(c)." The 6-month period expired July 5, 2015, but neither the State nor mother had obtained a transfer of jurisdiction from Nebraska. Mother then moved for more time to do so, which the district court granted. Father appeals that order, arguing that the district court's temporary emergency jurisdiction over N.U.'s custody had expired. We agree with father. We reverse the district court and order that the CINC case be dismissed.

FACTUAL AND PROCEDURAL BACKGROUND

N.U. was born in 2003 to C.B., mother, and J.U., father, who were residents of Nebraska. Shortly thereafter N.U.'s parents ceased their cohabitation. Child custody litigation followed. In 2008, the Sarpy County District Court in Nebraska resolved the parents' disputes for them: The court retained custody of N.U. but granted N.U.'s "primary possession" to father. Mother then moved to Kansas. N.U. continued to reside with father in Nebraska. The Nebraska court apparently left N.U.'s custodial status unchanged, although in December 2011, it ordered mother to begin paying child support.

Documents in the record indicate that each parent acquired new significant others and children over the succeeding years. Mother did not visit N.U. in person for roughly 6 years. Then, in early August 2014, the parents agreed that N.U. should stay with mother, at least for a while. The parents met, each signing a note indicating that mother was to have "possession" of N.U. "effective as of Sunday, August 10th, 2014" so that mother could obtain medical treatment for N.U. and enroll her in school. N.U. then remained with mother in Kansas. Almost immediately N.U. made complaints to mother about how she had been treated by father's girlfriend, C.R. The Kansas Department for Children and Families (DCF) commenced an investigation. N.U. alleged to DCF workers that C.R. treated her roughly verbally and physically. N.U. also alleged that C.R.'s son, who was close to N.U.'s age, touched her sexually.

3

On August 20, 2014, the State filed a petition in Gray County to have N.U. declared a CINC and be placed with mother. After a change of venue due to mother's relocation, the litigation proceeded in Ford County. In November 2014, father challenged Kansas' subject matter jurisdiction under the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA), K.S.A. 2015 Supp. 23-37,101 *et seq.*, based on the existing child-custody case in Nebraska and father's continued residence there. The Ford County District Court took up adjudication on the CINC petition and the motion to dismiss January 5, 2015. Father did not include the transcript of that hearing in the record. However, the district court entered a detailed journal entry regarding its findings and conclusions from that hearing. The court refused to dismiss the case. It determined that clear and convincing evidence supported a finding that N.U.'s conflict with C.R. "arose to at least the threat of mistreatment of the child by [C.R.]." The court determined that it had "temporary emergency jurisdiction pursuant to K.S.A. 23-37,204(a)" and found N.U. to be a CINC. The court placed N.U. with mother. The court indicated it would contact the Sarpy County District Court about its order "pursuant to K.S.A. 23-37,204(d)." Finally, the court specified that its CINC order "will remain in force for a period of 6 mos., pursuant to K.S.A. 23-37,204(c)."

Neither mother nor the State timely, *i.e.*, by the July 5, 2015, end date of the 6-month period, obtained an order from the Sarpy County District Court relinquishing jurisdiction to Kansas or otherwise authorizing Kansas courts to exercise jurisdiction over N.U.'s custody. On July 7, 2015, after the Kansas court's period for exercising temporary emergency jurisdiction under the UCCJEA had expired, mother filed a motion to extend the Kansas court's emergency jurisdiction. Mother alleged that "Mother has not had adequate time to obtain an order from the State of Nebraska." Later that same day, father filed a petition to enforce the UCCJEA, pointing out that the 6-month emergency jurisdiction period had passed without any authorization emanating from the Nebraska court that permitted Kansas to exercise jurisdiction over N.U.'s custody.

4

The district court conducted a hearing July 13, 2015, on the competing filings by mother and father. At the conclusion of the hearing, the district court decided "something has to be done" and in "light of the uncertainty" the district court ordered that the period of temporary emergency jurisdiction be extended for no more than 30 days. The district court indicated it would "send a written request to the District Court of Sarpy County, Nebraska, to make a determination to retain or relinquish jurisdiction." Father timely filed a notice of appeal from this order on July 15, 2015.

The parties have included in the record additional documents filed after the appealed-from order. The district court apparently prepared its own written Request for Determination of Jurisdiction, which it sent to the Sarpy County District Court on July 16, 2015. The request summarized the proceedings in Kansas up to that point in time. It also included a note indicating that mother sought to have jurisdiction transferred to Kansas as a more convenient forum and home state of the child but that father objected to the transfer of jurisdiction, believing Nebraska to be the more appropriate forum. The form included option blanks the Nebraska court could check to either retain or relinquish jurisdiction. The Nebraska court responded, marking the optional finding that "Kansas is the more appropriate jurisdiction for addressing child custody and enforcement issues for [N.U.]" and that the pending child-custody case in Nebraska "should be terminated and dismissed." That response from the Sarpy County court was filed with the clerk of the court in Ford County on August 3, 2015.

ANALYSIS

*This Appeal Is Not Moot.*

As a threshold matter, the State argues that the issues father raises in his appeal are now moot. The State contends this is so because the Nebraska court has relinquished jurisdiction over N.U.'s future custody to Kansas. The State seems to take the position

that the Nebraska relinquishment negates any previous orders it entered and validates all the orders in the Kansas CINC case. Father counters that, if he prevails on appeal and the CINC case here is dismissed, the last custody order in effect is the 2008 Nebraska order granting him N.U.'s "primary possession." Thus, he argues in essence that, even if Nebraska has closed its case, mother must return N.U. to him or seek a custody modification or new CINC order from a Kansas court.

Appellate courts generally do not decide moot questions or render advisory opinions. See *State v. Bennett*, 288 Kan. 86, 89, 200 P.3d 455 (2009); *Smith v. Martens*, 279 Kan. 242, 244, 106 P.3d 28 (2005). However, the mootness doctrine is rarely applied to dismiss an appeal unless "it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights." *McAlister v. City of Fairway*, 289 Kan. 391, 400, 212 P.3d 184 (2009).

As we noted above, the Nebraska court did not relinquish jurisdiction to Kansas until after the expiration of the 6-month period during which Kansas was exercising its temporary emergency jurisdiction under the UCCJEA. To effect that jurisdictional relinquishment the Nebraska court simply checked the blank for the option that it

> "[f]inds Kansas is the more appropriate jurisdiction for addressing child custody and enforcement issues for [N.U.] and the pending custody litigation in [the Nebraska court] should be terminated and dismissed and jurisdiction to address custody and parental rights should be transferred to the state of Kansas."

The Nebraska court also attached a copy of an entry on its docket that states that on July 22, 2015, that court signed and entered an "[o]rder finding Kansas as the appropriate jurisdiction."

6

As we explain below, the Ford County District Court erred when it extended its emergency jurisdiction. The district court should have dismissed the CINC case as of July 5, 2015, when it became manifest that Kansas had not timely acquired jurisdiction under the UCCJEA. Thus, while the Nebraska jurisdiction relinquishment may well be relevant if there is future litigation over N.U.'s custody, and we assume there will be, it does not render the issues father raises in his appeal moot. Needless to say, the State has failed to "clearly and convincingly [show] the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights." *McAlister*, 289 Kan. at 400.

*We Dismiss Father's Challenge to the Kansas Court's Initial Exercise of Temporary Emergency Jurisdiction under the UCCJEA.*

In his brief on appeal, father contends that the district court erred in exercising temporary emergency jurisdiction in the first place following the January 5, 2015, hearing. The State notes that we cannot adequately address this claim because father did not include a transcript of that hearing in the record on appeal.

We agree with the State:  Father's real point under this issue is that the evidence at the hearing was insufficient to support the trial court's exercise of temporary emergency jurisdiction under the UCCJEA. In order to exercise such temporary emergency jurisdiction, the Kansas court had to find that "the child is present in this state and . . . it is necessary in an emergency to protect the child because the child . . . is subjected to or threatened with mistreatment or abuse." K.S.A. 2015 Supp. 23-37,204(a). The district court's journal entry from the hearing specifically cited that statute and held that clear and convincing evidence showed that the conflict between N.U. and C.R. "arose to at least the threat of mistreatment of the child by [C.R.]." We cannot evaluate the sufficiency of the evidence supporting that finding without considering the testimony on which it was based. The burden is on the party making a claim of error to designate facts in the record

7

to support that claim; without such a record, the claim of error fails. See Supreme Court Rule 6.02(a)(4) (2015 Kan. Ct. R. Annot. 41); *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644-45, 294 P.3d 287 (2013).

But there is a more fundamental reason we must dismiss this portion of father's appeal. Father's notice of appeal states that he "appeals from the judgment entered on July 13, 2015 by the Honorable Van Z. Hampton extending temporary jurisdiction beyond the original order of [*sic*] setting the temporary jurisdiction at six months on January 5, 2015, to the Court of Appeals of the State of Kansas." Father's notice does not indicate that he appeals from the order of January 5, 2015, nor does he cite any error from that hearing in his docketing statement. We note that father timely appealed from the adjudication order entered at that hearing, but he subsequently dismissed that separate appeal in April 2015.

While the State does not challenge our jurisdiction over this point, we have a duty to question jurisdiction on our own initiative. According to K.S.A. 2015 Supp. 60-2103(b): "The notice of appeal shall specify the parties taking the appeal; shall designate the judgment or part thereof appealed from, and shall name the appellate court to which the appeal is taken." Moreover, our Supreme Court has stated that it is a fundamental proposition of Kansas appellate procedure that "'an appellate court only obtains jurisdiction over the *rulings identified* in the notice of appeal.' [Citation omitted.]" (Emphasis added.) *Associated Wholesale Grocers, Inc. v. Americold Corporation*, 293 Kan. 633, 637, 270 P.3d 1074 (2011), *cert. denied* 133 S. Ct. 158 (2012).

In *Gates v. Goodyear*, 37 Kan. App. 2d 623, 627, 629, 155 P.3d 1196, *rev. denied* 284 Kan. 945 (2007), a panel of this court pointed out that accepting jurisdiction to review findings, conclusions, or judgments that were not set out in the notice of appeal "would adjudicate out of existence the statutory mandate that a notice of appeal 'shall designate' the judgment appealed from." We will apply, rather than adjudicate out of existence, that mandate. The notice of appeal here does not designate the trial court's

rulings from the January 5, 2015, hearing as rulings that father was appealing. We do not have jurisdiction to review this separate issue. We dismiss for lack of jurisdiction father's attempt to appeal from the result of the January 5, 2015, adjudication hearing. See *Gates*, 37 Kan. App. 2d at 626.

*The District Court Erred When It Extended Its Temporary Emergency Jurisdiction under the UCCJEA.*

In this issue, father challenges the district court's jurisdiction under the UCCJEA to extend, as it did in its order of July 13, 2015, its temporary emergency jurisdiction for an additional 30 days. Father argues the district court's jurisdiction over the case expired on July 5, 2015, as the original order said it would. The State does not directly respond to father's UCCJEA argument. Rather, it contends that the 6-month temporary emergency jurisdiction period initially established was "tolled" during the period from February 4, 2015, when father filed his notice of appeal from the adjudication hearing, to April 6, 2015, when father dismissed that appeal.

Whether jurisdiction exists is a question of law over which this court exercises unlimited review. *Frazier v. Goudschaal*, 296 Kan. 730, 743, 295 P.3d 542 (2013). Here, father's challenge to the Kansas court's jurisdiction under the UCCJEA raises a question of law. As this court explained in *In re A.A.*, 51 Kan. App. 2d 794, 806-07, 354 P.3d 1205 (2015), to exercise temporary emergency jurisdiction under the UCCJEA, the Kansas court had to find "the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." K.S.A. 2015 Supp. 23-37,204(a). A finding that a child is in need of care under the Revised Kansas Code for Care of Children is not sufficient, by itself, to support the exercise of emergency jurisdiction under the UCCJEA. The district court made the necessary findings here.

9

But another crucial aspect of the UCCJEA is that the emergency jurisdiction which participating home states cede to second states is that the emergency jurisdiction is temporary. Thus, the home state's original jurisdiction must be recognized and accommodated even while the second state in which the child is present protects the child on a temporary emergency basis. K.S.A. 2015 Supp. 23-37,204(c) provides that the state that exercises emergency jurisdiction over a child's custody must, at the time it enters its emergency order, determine how long the emergency order can remain in effect:

"(c) If there is a previous child-custody determination that is entitled to be enforced under this act, or a child-custody proceeding has been commenced in a court of a state having jurisdiction under K.S.A. 2015 Supp. 23-37,201 through 23-37,203, and amendments thereto, *any order issued by a court of this state under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under K.S.A. 2015 Supp. 23-37,201 through 23-37,203, and amendments thereto*. The order issued in this state *remains in effect until an order is obtained from the other state within the period specified or the period expires*." (Emphasis added.) K.S.A. 2015 Supp. 23-37,204(c).

Our court has examined the reasons such provisions have been uniformly enacted. They minimize tension between otherwise competing states' jurisdictional interests in order to protect children in emergency situations. In *In re A.A.*, Judge Steve Leben explained:

"In state courts, a trial court will be designated to have broad subject-matter jurisdiction to hear claims. In Kansas, our district courts by statute 'have general original jurisdiction of all matters, both civil and criminal, unless otherwise provided by law.' K.S.A. 20-301. As a general matter, then, our district courts have the subject-matter jurisdiction to consider disputes that a court might address unless some other statute limits that authority. See *In re Estate of Heiman*, 44 Kan. App. 2d 764, 766, 241 P.3d 161 (2010); *City of Overland Park v. Niewald*, 20 Kan. App. 2d 909, 910-11, 893 P.2d 848, *aff'd as modified* 258 Kan. 679, 907 P.2d 885 (1995).

10

"The UCCJEA is one source of such statutory limits. All but one state has adopted it (and that state, Massachusetts, has adopted an earlier, similar uniform act, the Uniform Child Custody Jurisdiction Act). Kansas adopted the UCCJEA in 2000, and Mississippi adopted it in 2004. We will cite in our opinion to provisions of the Kansas statutes, but Mississippi has the same provisions.

"The UCCJEA seeks to avoid jurisdictional competition between the courts of different states over child-custody matters. It does so through rules that generally make sure that only one state at a time has jurisdiction (authority) over child-custody matters in any particular family.

"Central to the UCCJEA's method of keeping order between potentially conflicting state proceedings are two provisions. First, an initial custody determination generally must be made by the child's 'home state,' which is where the child has lived for at least 6 consecutive months before a court proceeding over custody was filed. See K.S.A. 2014 Supp. 23-37,201(a), (b); K.S.A. 2014 Supp. 23-37,102(8). Second, once an initial custody determination has been made, the state that made it generally retains exclusive jurisdiction over later custody issues until an event listed in the UCCJEA (such as a determination that neither parent nor the child still lives in the state) occurs. See K.S.A. 2014 Supp. 23-37,202(a).

"In addition to these listed events, there are two other ways that a second state may properly enter custody orders after initial orders have been entered by the child's home state. The first is the emergency exception, which allows another state's court to exercise temporary authority when a child has been abandoned or there's some other emergency need to immediately protect the child. See K.S.A. 2014 Supp. 23-37,204(a), (c), and (d). The second is a valid transfer of the case from Mississippi to Kansas, either based on a finding that Mississippi had become an inconvenient forum for the litigation, see K.S.A. 2014 Supp. 23-37,207, or a finding that Mississippi no longer had continuing exclusive jurisdiction. See K.S.A. 2014 Supp. 23-37,203.

. . . .

11

"Emergency jurisdiction under the UCCJEA allows courts to enter *temporary* orders to protect a child—but absent child abandonment, the situation must indeed be an *emergency* . . . . An emergency is '[a] serious situation or occurrence that happens unexpectedly and demands immediate action.' American Heritage Dictionary 583 (5th ed. 2011)." *In re A.A.*, 51 Kan. App. 2d at 803-07.

This court published its opinion in *In re A.A.* with the specific purpose of providing instruction on the UCCJEA to "[b]oth the judges and the attorneys who handle these cases [and] often have heavy caseloads." 51 Kan. App. 2d at 813. We agree with Judge Leben's analysis for the panel in *In re A.A.* In a nutshell, the UCCJEA allows home states to preserve their own jurisdictional power over their child custody determinations but also permits second states in which a home state's child is present to protect the child from mistreatment, at least on a temporary emergency basis. Without something like the UCCJEA an endangered child could suffer because of the lack of jurisdiction of a second state to protect the child.

However, the specific issue the *In re A.A.* court analyzed is not the one we must address here. There the court explained how the provisions of the UCCJEA must be applied at the outset of a CINC case where the second state, Kansas, is asked to protect a child from mistreatment who is subject to another (the "home") state's jurisdiction. 51 Kan. App. 2d at 806. From all appearances, the district court here was well aware of the statutes Kansas has enacted in compliance with the UCCJEA when it made its January 5, 2015 orders. It incorporated specific references to the applicable UCCJEA statute, K.S.A. 2015 Supp. 23-37,204, and its relevant subsections when it made its emergency order. Further, as was another goal of the court in *In re A.A.*, each party has referred to the holding in that case in its brief.

The issue in this case does not concern the initial acquisition of UCCJEA jurisdiction. The question here concerns the termination of the temporary emergency jurisdiction that has been acquired under the UCCJEA. Thus, we must look to and apply

the specific provisions of our UCCJEA statutes when those supply the only basis for Kansas jurisdiction. Here the district court initially complied with the requirement in K.S.A. 2015 Supp. 23-37,204(c) that the court "must specify in the [temporary emergency] order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under K.S.A. 2015 Supp. 23-37,201 through 23-37,203, and amendments thereto." The district court did so and determined that 6 months was such an adequate period.

However, mother did not comply with that order: She did not "obtain an order from" Nebraska relinquishing jurisdiction to Kansas within that 6-month period. The statute directs what a court must do in such a situation. K.S.A. 2015 Supp. 23-37,204(c) provides for the termination of jurisdiction acquired under the temporary emergency provisions of the UCCJEA, stating that "[t]he order issued in this state remains in effect until an order is obtained from the other state within the period specified *or the period expires*." (Emphasis added.)

Here, the 6-month "period" established in the district court's temporary emergency jurisdiction order in N.U.'s CINC case clearly expired before mother moved for additional time. The period having expired, the temporary emergency order giving Kansas jurisdiction over N.U.'s CINC case no longer remained in effect. It is not necessary that we decide whether an extension request made before the expiration of the originally set temporary emergency period could be granted. That is not what happened here.

Although the State does not argue a different construction of K.S.A. 2015 Supp. 23-37,204(c), the State does argue that the 6-month period set by the district court was tolled for the roughly 60-day period between father's appeal of the January 5, 2015, adjudication order and father's subsequent voluntary dismissal of that appeal. The State also argues that the 6-month time limit should not apply because father obtained

13

continuances in the Nebraska court of hearings on mother's efforts to terminate her child support obligation. The State says father exhibited "plain and simple bad faith" which allowed him to "burn through the six month period for activity set by the court." The record does not contain any evidence of these claims from the Nebraska court nor does the State offer any legal authority to support them.

We note that K.S.A. 2015 Supp. 38-2273 governs appeals in CINC cases. K.S.A. 2015 Supp. 38-2273(a) specifically permits an appeal from an order of adjudication, the order father appealed, which appeal he subsequently dismissed. We further note that K.S.A. 2015 Supp. 38-2273(f) provides that "[w]hile a case is on appeal from the district court, the district court or magistrate court shall continue to have jurisdiction over all issues not specifically appealed and shall conduct timely permanency hearings." Father's appeal only concerned the propriety of the district court's acceptance of emergency temporary jurisdiction and the CINC adjudication. Finally, we note that K.S.A. 2015 Supp. 38-2274(a) provides: "Pending the determination of the appeal, any order appealed from shall continue in force unless modified by temporary orders as provided in subsection (b)." The CINC appeal statutes did not in any way, then, prevent mother, the State, or the district court from taking steps to attempt to obtain a transfer of or relinquishment of jurisdiction from Nebraska. The State's argument for tolling is without merit.

The district court erred when it granted mother a 30-day extension on the court's temporary emergency jurisdiction and rejected father's request that the CINC case be dismissed for lack of jurisdiction. We reverse the district court's decisions on those issues, find that the Kansas court's UCCJEA temporary emergency jurisdiction expired before mother moved for an extension, and dismiss the CINC case from which this appeal arises for lack of subject matter jurisdiction.

Reversed and case dismissed.

14