NOT DESIGNATED FOR PUBLICATION

No. 116,843

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CHELSEA ELIZABETH BRADFIELD, et al.,
*Appellee*,

v.

JORGE URIAS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ford District Court; SIDNEY R. THOMAS, judge. Opinion filed January 26, 2018.
Affirmed.

*Terry J. Malone*, of Williams-Malone, P.A., of Dodge City, for appellant.

*Sarah Doll Heeke*, of Doll Law Firm, LLC, of Dodge City, for appellee.

Before GARDNER, P.J., BUSER and ATCHESON, JJ.

PER CURIAM:  Father, who originally received child custody orders from a
Nebraska district court, contends that the Kansas district court that later issued child
custody orders regarding the same child had no authority to do so. We find that the
Kansas district court had jurisdiction to act, so we affirm.

*Factual and procedural background*

This is Father's second appeal challenging the jurisdiction of a Kansas district
court to enter child custody orders concerning his child, N.U. Father lived in Nebraska

1

and that state issued child custody orders in 2008. By agreement of Father and Mother, the child later went to live with Mother in Kansas. While in Kansas, the child was the subject of a child in need of care (CINC) case based on events that had occurred while the child had resided with Father. Kansas asserted emergency jurisdiction under the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA) and then attempted to extend that six-month jurisdiction.

In Father's first appeal, we dismissed the CINC case regarding N.U. because the Kansas district court lacked any authority to extend its temporary emergency jurisdiction beyond six months. See *In re N.U.*, 52 Kan. App. 2d 561, 369 P.3d 984 (2016). Nebraska had initial jurisdiction and was the child's home state. At the time the Kansas district court entered its order of extension, it told the parties it would be contacting Nebraska to see whether Nebraska wished to retain or relinquish jurisdiction. Father then filed a notice of appeal raising only the attempted extension of emergency jurisdiction. Shortly thereafter, in July 2015, the district court sought and received Nebraska's relinquishment of jurisdiction stating it terminated and dismissed its case. 52 Kan. App. 2d at 564-65. Father did not amend his notice of appeal or file a new notice of appeal to cover that alternate basis for jurisdiction. We acknowledged that the effectiveness of Nebraska's relinquishment could be an issue in future litigation. 52 Kan. App. at 566. It has become so now.

On March 14, 2016, soon after we dismissed the CINC case for lack of emergency jurisdiction, Mother filed a pro se petition in the Kansas district court to establish custody and enforce child support. The district court issued ex parte orders that same day, granting temporary sole custody to Mother. At that time, Nebraska had relinquished jurisdiction and no challenge had been made to the effectiveness of that relinquishment.

On March 29, 2016, Father moved to dismiss the petition and vacate the ex parte orders, asserting that Kansas had no jurisdiction to enter them. Kansas held a hearing on

2

Father's motion in April 2016 and found Kansas had jurisdiction because Nebraska had relinquished jurisdiction in July 2015. Father's counsel then orally withdrew his motion to dismiss and asked for time to confer with his client and prepare proposals for temporary custody and parenting time. The record does not show that Father filed any proposals.

Instead, in May 2016, Father went to the Nebraska court and moved it to vacate the 2015 orders in which it had relinquished its jurisdiction. But Father did not file any Kansas pleadings with his motion or otherwise inform Nebraska of the existence of the Kansas custody case, in violation of his duty under K.S.A. 2016 Supp. 23-37,209. That statute requires each party in a child-custody proceeding, in its first pleading or in an attached affidavit, to state whether that party has participated in any capacity in any other proceeding concerning the custody of the child and, if so, to identify the court, the case number, and the date of the child-custody determination. Mother apparently did not have an attorney in Nebraska and did not file any responsive pleading. Therefore, the Nebraska court entered default judgment.

In September 2016, while the Kansas court orders granting custody to Mother were still in effect, Father returned to Kansas and moved to enforce the Nebraska orders the Nebraska district court had allegedly reinstated. But Father did not attach the orders to his motion and they are not included in our record on appeal. At the hearing on Father's motion, the Kansas court stated that at the time Mother filed her petition to gain custody in March 2016, the Nebraska case had been "dismissed" and "terminated." Counsel for Father and Mother agreed. The judge in Kansas then suggested contacting the Nebraska judge directly to iron out the conflicting orders.

The judge in Kansas called the judge in Nebraska at the agreed time and they had a brief discussion on the record. The judges determined that Kansas was N.U.'s home state and the most convenient forum. The judge in Kansas stated his concern that the requirements of the UCCJEA be met by making the appropriate findings to be reflected

3

in the Nebraska court's order relinquishing jurisdiction. The court in Nebraska issued its order and the court in Kansas filed the Nebraska order and entered its own order on October 19, 2016. Father timely appeals the Kansas order.

*Standard of review*

The primary issue for our resolution is whether the district court erred in finding that it had subject matter jurisdiction over this dispute. Whether subject matter jurisdiction exists is a question of law over which we exercise unlimited review. *Graham v. Herring*, 297 Kan. 847, 855, 305 P.3d 585 (2013). The question involves interpretation of the UCCJEA, which also requires us to exercise unlimited review. *McNabb v. McNabb*, 31 Kan. App. 2d 398, 403, 65 P.3d 1068 (2003).

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *Nationwide Mutual Ins. Co. v. Briggs*, 298 Kan. 873, 875, 317 P.3d 770 (2014). We must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meaning. *Cady v. Schroll*, 298 Kan. 731, 738, 317 P.3d 90 (2014). When a statute is plain and unambiguous, we will not speculate about legislative intent and will refrain from reading something into the statute that is not readily found in its words. 298 Kan. at 738.

*Subject matter jurisdiction under the UCCJEA*

Under K.S.A. 2016 Supp. 23-3218(a), changes of child custody or placement are subject to the provisions of the UCCJEA. We explained the general jurisdictional rules on interstate communication and transfer of jurisdiction under the UCCJEA in *In re A.A.*, 51 Kan. App. 2d 794, 354 P.3d 1205 (2015).

"Central to the UCCJEA's method of keeping order between potentially conflicting state proceedings are two provisions. First, an initial custody determination generally must be made by the child's 'home state,' which is where the child has lived for at least 6 consecutive months before a court proceeding over custody was filed. See K.S.A. 2014 Supp. 23-37,201(a), (b); K.S.A. 2014 Supp. 23-37,102(8). Second, once an initial custody determination has been made, the state that made it generally retains exclusive jurisdiction over later custody issues until an event listed in the UCCJEA (such as a determination that neither parent nor the child still lives in the state) occurs. See K.S.A. 2014 Supp. 23-37,202(a).

"In addition to these listed events, there are two other ways that a second state may properly enter custody orders after initial orders have been entered by the child's home state. The first is the emergency exception, which allows another state's court to exercise temporary authority when a child has been abandoned or there's some other emergency need to immediately protect the child. See K.S.A. 2014 Supp. 23-37,204(a), (c), and (d). The second is a valid transfer of the case from [the home state] to Kansas, either based on a finding that [the State] had become an inconvenient forum for the litigation, see K.S.A. 2014 Supp. 23-37,207, or a finding that [the state] no longer had continuing exclusive jurisdiction. See K.S.A. 2014 Supp. 23-37,203." *In re A.A.*, 51 Kan. App. 2d at 804.

In our case, because Nebraska initially issued a child custody order, it was the home state and retained exclusive, continuing jurisdiction over custody determinations. Father remained a resident of Nebraska, although Mother and child had moved to Kansas. No court determined that neither parent nor the child still lived in Nebraska, thus none of the listed events in K.S.A. 2016 Supp. 23-37,202(a) occurred. Accordingly, the Kansas court lacked subject matter jurisdiction unless there was an emergency or the Nebraska court properly transferred the case to Kansas. The prior appeal in this case determined that emergency jurisdiction had expired and we do not reexamine that conclusion. No one asserts emergency jurisdiction now. The first two exceptions noted above thus do not apply.

5

*Modification jurisdiction*

Our question, then, is whether the Nebraska court properly transferred the case to Kansas. The following statute governs our analysis:

> "[A] court of this state may not modify a child-custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under subsection (a)(1) or (2) of K.S.A. 2016 Supp. 23-37,201, and amendments thereto, and:
>
> (1) The court of the other state determines it no longer has exclusive, continuing jurisdiction under K.S.A. 2016 Supp. 23-37,202, and amendments thereto, or that a court of this state would be a more convenient forum under K.S.A. 2016 Supp. 23-37,207, and amendments thereto." K.S.A. 2016 Supp. 23-37,203.

As applied to this case, Kansas may thus not modify the child-custody determination made by Nebraska unless it has home state jurisdiction and Nebraska determined that it declined to exercise its jurisdiction in favor of a more convenient forum. K.S.A. 2016 Supp. 23-37,203.

*Did Kansas have jurisdiction to make an initial determination?*

We first examine whether Kansas had "jurisdiction to make an initial determination under subsection (a)(1) or (2) of K.S.A. 2016 Supp. 23-37,201." K.S.A. 2016 Supp. 23-37,203.The district court's decision was based on (a)(1), which states:

> "(a) Except as otherwise provided in K.S.A. 2016 Supp. 23-37,204, and amendments thereto [emergency jurisdiction], a court of this state has jurisdiction to make an initial child-custody determination only if:
>
> (1) This state is the home state of the child on the date of the commencement of the proceeding." K.S.A. 2016 Supp. 23-37,201.

6

This basis of jurisdiction is aptly summarized as "home state" jurisdiction. The district court found Kansas was the home state.

*Home state jurisdiction*

"Home state" is defined as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding." K.S.A. 2016 Supp. 23-37,102(8). "Child-custody proceeding" is broadly defined to mean "a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue. The term includes a proceeding for divorce." K.S.A. 2016 Supp. 23-37,102(5). It is undisputed that Father and the child lived in Nebraska when the Nebraska court made the initial determination by granting child custody to Father in 2008. See K.S.A. 2016 Supp. 23-37,102(9). Nebraska was thus the home state of the child in 2008.

But by the time Mother filed her petition in Kansas for child custody in March 2016, Mother and the child had been living in Kansas for approximately two years. Father acknowledges that N.U. lived in Kansas with Mother for about two years immediately before Mother filed her petition for custody of N.U. in Kansas in 2016. By definition, then, Kansas was N.U.'s home state when Mother filed her petition for child custody in March 2016.

Father argues that Nebraska retained home state status because Nebraska's relinquishment of jurisdiction was not proper. But that argument improperly mixes two concepts. Home state status is determined by where the child lives and is not dependent on the action of another court relinquishing jurisdiction. *Harter v. Szykowny*, No. 112,206, 2015 WL 5458602, at *6 (Kan. App. 2015) (unpublished opinion). We find no error in the Kansas district court's determination that Kansas was the child's home state when Mother filed her petition in 2016. The first requirement for jurisdiction pursuant to

7

K.S.A. 2016 Supp. 23-37,203 was thus met—the Kansas district court had jurisdiction to make an initial determination under subsection (a)(1) of K.S.A. 2016 Supp. 23-37,201.

*Did Nebraska determine that it declined to exercise its jurisdiction because Kansas was a more convenient forum?*

We next ask whether Nebraska, the "court of the other state determine[d] . . . that a court of this state would be a more convenient forum under K.S.A. 2016 Supp. 23-37,207." K.S.A. 2016 Supp. 23-37,203(1). If so, Kansas, the home state in 2016, had jurisdiction to modify the child custody determination initially made by Nebraska.

The record shows that on August 3, 2015, and again on October 20, 2016, Nebraska determined that Kansas would be a more convenient and appropriate forum. In July 2015, the Kansas district court mailed a request to the Nebraska district court asking it to choose whether to retain or relinquish jurisdiction. The Nebraska district court replied, by order filed in Kansas in August 2015, that Kansas was the more appropriate forum and that the pending litigation in Nebraska "should be terminated and dismissed." *In re N.U.*, 52 Kan. App. 2d at 565. Counsel for Father and Mother agreed that the Kansas court stated that when Mother filed her petition to gain custody in March 2016, the Nebraska case was "dismissed" and "terminated." Our record does not contain any order revoking that relinquishment. We thus assume that the 2015 relinquishment of jurisdiction to Kansas by Nebraska was valid. See *State v. Kleypas*, 305 Kan. 224, 344, 382 P.3d 373 (2016) (without a record affirmatively demonstrating error, an appellate court presumes the action of the court was proper), *cert. denied* 137 S. Ct. 1381 (2017); *In re Marriage of Arceneaux*, 51 Cal. 3d 1130, 1133-34, 275 Cal. Rptr. 797, 800 P.2d 1227 (1990) (applying a presumption of correctness to judgments; prejudicial error must be affirmatively shown).

8

We nonetheless focus on the 2016 transfer, as did the district court. The district court held a hearing on September 26, 2016, at which the parties argued whether Nebraska or Kansas had jurisdiction. At the conclusion of that hearing, the Kansas judge offered to resolve the issue by calling the Nebraska judge to talk about a transfer of the case based upon a finding that Nebraska had become an inconvenient forum. Father's attorney asked for "some time on that" and requested a week or two.

Two weeks later, on October 11, 2016, the Kansas judge held a status conference with both attorneys to decide whether to call the judge in Nebraska or to move forward and litigate the matter. The Kansas judge told counsel that the statute permits but does not require attorneys to be there, but that a record had to be made. Father's attorney stated that his client did not want the judge to confer with the Nebraska judge, but the Kansas judge properly found the statute did not require the parties' consent. See K.S.A. 2016 Supp. 23-37,207. The Kansas judge asked the attorneys if they would like to be present, and both stated they did. The judge replied that he was fine with that, but that if the Nebraska judge was not, he would ask them to step out. The Kansas judge then called the Nebraska court, located the correct judge's office, and set up a telephone conference for October 19.

Mother's counsel then asked about exchanging documentation:

"[MOTHER'S COUNSEL]: I'm wondering what kind of documentation—Do we need any documentation exchanged between then, like—or is it just gonna be, here's what's in our file, and he says, here's what's in my file and—what should we do? Or does he need—

"THE COURT: At this point, yes.

"[MOTHER'S COUNSEL]: Okay.

"THE COURT: Unless you have it—Unless you have a different procedure. That's what I was thinking because I'm gonna be there and it's gonna be judge to judge, and that's why if he wants it to be judge to judge, it will be and—but I—you guys can be there and make that determination when we get there, so-okay?

9

"[MOTHER'S COUNSEL]:  Okay.
"[FATHER'S COUNSEL]:  Very good, Your honor."

A week later, on October 19, 2016, the telephone conference between the two judges occurred. Counsel for Father and Mother were present for part of that conference but did not contribute to the conversation. The Kansas judge's journal entry states that after some discussion, the Nebraska judge asked for time to review his file. "The attorneys understood that that would be at an uncertain time so that they would not be present and did not voice any objection."

When the Nebraska judge later called the Kansas judge back, their discussion was placed on the record. The record of their conversation shows the Nebraska judge found Kansas to be the most convenient forum because Father had submitted to the Kansas court, because the child had been there "so long," and because of all the matters pending in Kansas. The Kansas judge stated his concern that Father had not previously told the Nebraska judge about the Kansas case.

The Nebraska judge's order transferring jurisdiction states that after consultation with the Kansas judge, he found that the minor child had resided in Kansas for over six months and that "Kansas is the most convenient forum for further proceedings in this matter, and finds the child has been in Kansas in excess of two years and all evidence that would be necessary to determine custody and visitation are more appropriate to be held in Ford County, Kansas."

The corresponding Kansas journal entry states that the Nebraska judge found that "Kansas is now the home state. . . . Kansas is now the more appropriate jurisdiction for addressing child custody, parenting time, and child support issues given that Kansas is now where the majority of the witnesses are who would provide the needed evidence as to what is in the best interest of the child given the length of time the child has been

10

placed with the mother in Kansas." The same journal entry states the Kansas judge "also agrees with and makes those same findings—that Kansas is the most convenient and appropriate jurisdiction for addressing the issues of this case and that Kansas has now become the home state."

Father contends that the Nebraska 2016 relinquishment was ineffective because the court did not follow the necessary procedures or address all the factors set forth in K.S.A. 2016 Supp. 23-37,207. But K.S.A. 2016 Supp. 23-37,203 is narrow in its scope, asking only whether "[t]he court of the other state determine[d] . . . that a court of this state would be a more convenient forum under K.S.A. 2016 Supp. 23-37,207, and amendments thereto." K.S.A. 2016 Supp. 23-37,203(1). This statute does not permit us to reexamine the correctness of the inconvenient forum analysis done by the Nebraska court. See Neb. Rev. Stat. § 43-1244 (Nebraska's counterpart to this Kansas statute). Instead, K.S.A. 2016 Supp. 23-37,203 merely requires the transferee state (Kansas) to find that the transferring state (Nebraska) determined that the transferee state would be a more convenient forum under K.S.A. 2016 Supp. 23-37,207.

The narrow focus of K.S.A. 2016 Supp. 23-37,203 is consistent with the appellate boundaries of K.S.A. 60-2101—we have no jurisdiction to review an order from a district court of another state.

> "(a) The court of appeals shall have jurisdiction to hear appeals from district courts, except in those cases reviewable by law in the district court and in those cases where a direct appeal to the supreme court is required by law. The court of appeals also shall have jurisdiction to hear appeals from administrative decisions where a statute specifically authorizes an appeal directly to the court of appeals from an administrative body or office." K.S.A. 60-2101(a).

The district courts from which we have jurisdiction to hear appeals are the district courts in each county in Kansas, not any district court in Nebraska. See K.S.A. 20-301.

11

A challenge to a determination made by a court of another state must be made in that other state. See *Harter*, 2015 WL 5458602, at *7. In *Harter*, the court in Arkansas relinquished jurisdiction to Kansas. The appellant did not file an appeal in Arkansas and we refused to review the order from the Arkansas court, even if it was possibly based on an error in a previous ruling by Kansas. See also *McAllister v. Pacheco*, No. 94,995, 2006 WL 1816426, at *5 (Kan. App. 2006) (unpublished opinion) ("we are simply unable and unwilling to look behind the judgment and order of a judge in another State"); *In re Ashley D.*, No. E035526, 2005 WL 45052, at *3 (Cal. App. 2005) (unpublished opinion) (finding any errors made by the Oregon court in not following the UCCJEA are not reviewable in California).

Father did not appeal in Nebraska either the 2015 or the 2016 relinquishment to Kansas by the Nebraska district court. We have no jurisdiction to review the Nebraska order in July 2015 that relinquished jurisdiction to Kansas, the Nebraska order in August 2016 that allegedly attempted to recapture its jurisdiction, or the Nebraska order in October 2016 that relinquished jurisdiction again after finding Kansas to be the more appropriate forum. But the record in this case which we have jurisdiction to review shows that Nebraska, the "court of the other state," determined that a court of this state would be a more convenient forum. No more is necessary. See, e.g., *Williams v. Walker*, 185 N.C. App. 393, 401-03, 648 S.E.2d 536 (2007) (finding that the record contained an order filed by the Illinois court relinquishing exclusive, continuing jurisdiction over the custody of the child, so North Carolina could assume modification jurisdiction and thereafter exercise exclusive jurisdiction); *In re JEJ*, 188 N.C. App. 632, 2008 WL 305288, at *3 (unpublished opinion) (2008) (Because the record contained orders demonstrating South Carolina's intent to terminate its exclusive, continuing jurisdiction over the children, North Carolina properly assumed modification jurisdiction in a termination of parental rights proceeding, applying the UCCJEA.); see also *Ex parte B.N.*, 203 So. 3d 1234, 1242 (Ala. Civ. App. 2016) (finding that once the Mississippi court conceded that Alabama was the proper forum to assert jurisdiction over this matter, the Alabama court could then

12

properly assume jurisdiction pursuant to its UCCJEA provisions § 30-3B-203(1) and § 30-3B-201(a)(3) and communication between the courts was rendered unnecessary).

Father contends that the procedures required by K.S.A. 2016 Supp. 23-37,207, such as allowing the parties to submit information and making findings on the eight relevant factors, were not followed. But those procedures are not imposed upon the Kansas district court in this case. Instead, they are imposed upon the transferring state that is declining to exercise jurisdiction. Under this statute, "[a] court of this state which has jurisdiction under this act to make a child-custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." K.S.A. 2016 Supp. 23-37,207(a). The Kansas court did not decline to exercise its jurisdiction or determine that is was an inconvenient forum. It was Nebraska that did so. It is thus the Nebraska judge and not the Kansas judge who "shall allow the parties to submit information" and who "shall consider all relevant factors" before "determining whether it is an inconvenient forum." See K.S.A. 2016 Supp. 23-37,207(b); Neb. Rev. Stat. § 43-1244.

The record shows the Nebraska court determined that a Kansas court would be a more convenient forum. See K.S.A. 2016 Supp. 23-37,207. The requirements for modification jurisdiction under K.S.A. 2016 Supp. 23-37,203 were thus met—Kansas was N.U.'s home state in 2016 under K.S.A. 2016 Supp. 23-37,201(a)(1), and Nebraksa, the "court of the other state" determined "that a court of this state would be a more convenient forum." See K.S.A. 2016 Supp. 23-37,207; K.S.A. 2016 Supp. 23-37,203. The exercise of jurisdiction by the Kansas district court was thus proper.

13

*Mother's motion for attorney fees on appeal*

Mother has filed a motion for Father to pay her costs ($120) and attorney fees ($6,400) incurred on appeal. Father opposes the motion, noting that Mother's affidavit does not specify any factors considered in the reasonableness of the fee requested as required by Supreme Court Rule 7.07(b)(2)(c) (2017 Kan. S. Ct. R. 50) and fails to state any ground for the motion as required by Supreme Court Rule 5.01(a) (2017 Kan. S. Ct. R. 30).

Mother's sole stated basis for fees on appeal is that the district court had the authority to award attorney fees pursuant to K.S.A. 2016 Supp. 60-3107(a)(7). That statute relates to protection from abuse orders, saying: "(a) The court may approve any consent agreement to bring about a cessation of abuse of the plaintiff or minor children or grant any of the following orders: (7) Awarding costs and attorney fees to either party." K.S.A. 2016 Supp. 60-3107(a)(7).

Although Kansas initially invoked emergency jurisdiction to handle the CINC case regarding N.U., that case closed long before Father's present appeal began. Mother's underlying petition which gave rise to this appeal was for child custody and to enforce child support. It was not a protection from abuse proceeding and was not related to a protection from abuse proceeding. Mother states no other basis for a fee award.

We thus deny Mother's motion for costs and attorney fees incurred on appeal.

Affirmed.

14

ATCHESON, J., concurring in part and dissenting in part: I respectfully dissent from the majority's conclusion that Chelsea Elizabeth Bradfield established the Ford County District Court's jurisdiction to consider her child custody motions. She failed to show the Nebraska courts ceded jurisdiction in conformity with the Uniform Child-Custody Jurisdiction and Enforcement Act. Accordingly, the orders issued by the Ford County District Court are void and must be vacated on Jorge Urias' appeal. I would so rule.

The fight between Bradfield and Urias over the custody of their daughter has bounced back and forth between the Nebraska and Kansas courts and has an extended and somewhat convoluted history. When the dispute began, Bradfield, Urias, and their daughter all lived in Nebraska. The Nebraska trial court issued various orders regarding custody issues. Bradfield and the child then moved to Kansas and have lived here for several years. Urias has been a resident of Nebraska throughout these proceedings. Both Kansas and Nebraska have adopted the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA). See K.S.A. 2016 Supp. 23-37,101 et seq.; Neb. Rev. Stat. § 43-1226 et seq.

The parties and the majority properly focus on the legal and factual circumstances as they were in October 2016. The Nebraska trial court had reclaimed jurisdiction over the child custody matter—a reclamation the parties do not really dispute and, perhaps more importantly, a reclamation Bradfield never contested in the Nebraska courts. Conversely, Urias did appear in the Ford County custody proceedings and in October 2016 challenged the district court's jurisdiction to enter any orders.

Everyone agrees the UCCJEA covers this sort of interstate overlap and limits the subject matter jurisdiction of the district courts to hear and decide child custody issues.

15

See *In re A.A.*, 51 Kan. App. 2d 794, 804-05, 354 P.3d 1205 (2015); *In re T.A.B.*, No. 113,609, 2015 WL 8590161, at *1 (Kan. App. 2015) (unpublished opinion). The UCCJEA's laudable purpose is to avoid having multiple states issue potentially conflicting custody orders for the same children and to keep parents battling each other over custody from forum-shopping among states to secure favorable orders. When a court in another UCCJEA state issues an initial order regarding the legal custody of a child, a Kansas court typically may not then address that child's custody unless jurisdiction has been transferred or otherwise lodged here in conformity with the Act. See *In re A.A.*, 51 Kan. App. 2d at 806; *In re T.A.B.*, 2015 WL 8590161, at *3. The UCCJEA recognizes a limited exception for emergencies, which the Ford County District Court earlier relied upon with Bradfield and Urias. But the Ford County District Court's jurisdiction to act in response to any emergency expired. *In re N.U.*, 52 Kan. App. 2d 561, 562, 369 P.3d 984 (2016).

So long as the Nebraska trial court retained jurisdiction over child custody matters related to Bradfield and Urias' daughter in October 2016, the UCCJEA precluded the Ford County District Court from acting. The Ford County District Court would lack subject matter jurisdiction to issue custody orders regarding the child unless the Nebraska trial court had transferred jurisdiction under the UCCJEA. Bradfield had the obligation to show the Ford County District Court acquired jurisdiction through the UCCJEA, and she has not done so.

As a general principle, a court without subject matter jurisdiction lacks the legal authority to consider the dispute the parties have presented. *Padron v. Lopez*, 289 Kan. 1089, 1106, 220 P.3d 345 (2009); *In re Estate of Heiman*, 44 Kan. App. 2d 764, Syl. ¶ 2, 241 P.3d 161 (2010). Parties cannot waive the lack of subject matter jurisdiction. Nor can they confer subject matter jurisdiction on the district court by agreement or acquiescence. And a court is obligated to question its subject matter jurisdiction even if the parties have not. See *Estate of Heiman*, 44 Kan. App. 2d at 766. The party seeking to invoke the

16

district court's authority has the burden of proving subject matter jurisdiction. *Katz v. Donna Karan Company, L.L.C.*, 872 F.3d 114, 120 (2d Cir. 2017); *United States v. Ceballos-Martinez*, 387 F.3d 1140, 1143 (10th Cir. 2004); *In re P.J.B.*, No. 115,472, 2017 WL 945654, at *4 (Kan. App. 2017) (unpublished opinion) (applying UCCJEA). Perhaps most significantly for the litigants, if a district court lacks subject matter jurisdiction over a case, its orders and any judgment are void and have no legal effect. *In re Marriage of Hampshire*, 261 Kan. 854, 862, 934 P.2d 58 (1997); *Estate of Heiman*, 44 Kan. App. 2d at 766.

The UCCJEA provides that a court in the state having jurisdiction over a child custody matter (here, Nebraska) may cede its jurisdiction to a court of another state (here, Kansas) if the other court could otherwise exercise jurisdiction under the UCCJEA and it would provide a more convenient forum. The decision rests with the court then holding jurisdiction over the child custody matter. In October 2016, the Nebraska trial court held that jurisdiction over Bradfield, Urias, and their custody battle.

As provided in Neb. Rev. Stat. § 43-1244, the Nebraska trial court could relinquish jurisdiction to the Ford County District Court as a more convenient forum based on eight enumerated statutory criteria considered along with "all relevant factors." The statutory criteria are: (1) whether domestic violence has occurred and may continue and which state may better protect the parties and the child; (2) how long the child has resided outside the state (here, Nebraska); (3) the distance between the Nebraska court and the court that would assume jurisdiction; (4) the "relative financial circumstances" of the parties; (5) any agreement by the parties as to which court should exercise jurisdiction; (6) the type and location of evidence, including the child's testimony, bearing on the litigation; (7) how expeditiously the issues could be decided in either state and the procedures governing presentation of evidence; and (8) the familiarity of each court with the facts and issues in the litigation. Neb. Rev. Stat. § 43-1244. When

17

considering a transfer under Neb. Rev. Stat. § 43-1244, the Nebraska court must allow the parties "to submit information" bearing on the proposed change in jurisdiction.

Under the UCCJEA, judges from different states may communicate with each other regarding potential jurisdictional issues or conflicts. See K.S.A. 2016 Supp. 23-37,110; Neb. Rev. Stat. § 43-1235. The parties may be allowed to participate in that communication. But if they do not, they must be notified of the communication and must be provided with a record of the judges' exchange. K.S.A. 2016 Supp. 23-37,110; Neb. Rev. Stat. § 43-1235.

As the party seeking relief in the Ford County District Court, Bradfield bore the burden of proving jurisdiction and, thus, that the Nebraska trial court had relinquished jurisdiction consistent with the UCCJEA. In my view, the record fails to establish a legally sufficient transfer of jurisdiction. The Ford County District Court, therefore, never acquired subject matter jurisdiction for purposes of the UCCJEA, and its orders cannot be enforced.

What we have is a one-page order from the Nebraska trial court for Sarpy County issued October 20, 2016, transferring jurisdiction to the Ford County District Court and closing its case. The Nebraska order, however, makes no reference to the UCCJEA or the statutory factors in Neb. Rev. Stat. § 43-1244 for ceding jurisdiction to a more convenient forum. The order identifies Kansas as a more convenient forum because the child has resided there for more than two years and "all relevant evidence" on custody and visitation would be found there. The latter representation seems questionable, since Urias continued to live in Nebraska and would have some evidence, if only his testimony, bearing on the issue. But we may infer the bulk of the evidence likely would be found where the child had most recently lived for some substantial time.

18

The October 20 order does not indicate that Bradfield and Urias were given the opportunity to provide information on whether jurisdiction should be transferred, as the UCCJEA requires. The order also states that the Nebraska trial judge entered the order "[a]fter consultation with" the assigned Ford County District Court judge. The order, however, fails to show that the parties either participated in or were otherwise informed of that consultation, despite the UCCJEA requirement. Nothing else in the record on appeal shows Bradfield and Urias had the opportunity to address the transfer with the Nebraska trial court or that they were fully informed of the consultation between the two judges. The transcript from a brief hearing with the Ford County District Court regarding the jurisdictional issue is, at best, unclear on both those points.

In short, the record fails to show that the Nebraska trial court considered or applied the UCCJEA when it transferred jurisdiction to the Ford County District Court, thereby rendering the order facially deficient to establish jurisdiction in the Ford County District Court. To prove jurisdiction, Bradfield had to demonstrate the courts actually relied on the governing statutes and those legal principles. At the very least, that requires an order identifying that body of law in some fashion or some other record evidence, such as a hearing transcript, of a facially sufficient bench ruling from the Nebraska trial court. As it is, the record contains nothing showing the Nebraska trial court purported to apply the UCCJEA in making its ruling. And that renders the order facially inadequate as Bradfield's proof of subject matter jurisdiction in the Ford County District Court.

The majority never really addresses this defect in the record evidence. Rather, the majority considers what amounts to an entirely different issue: Whether Urias could have challenged the underlying merits of a facially sufficient order from the Nebraska trial court in this proceeding in the Ford County District Court. The majority correctly concludes he could not have. If the issue here were the merits of the Nebraska trial court's decision that the UCCJEA supported transferring jurisdiction to the Ford County District Court, Urias would have to take that up with the Nebraska Court of Appeals. It is neither

19

our business nor the Ford County District Court's business to second guess the merits of such a determination.

But the issue here is whether Bradfield proved jurisdiction lay in the Ford County District Court in the first place when it sought to act in late 2016. To do so, she had to show the Nebraska trial court transferred jurisdiction by relying on the UCCJEA—not that its reliance led to a sound result under the UCCJEA in light of the facts. Bradfield has not made the required jurisdictional showing. That jurisdictional conclusion does not look behind the Nebraska trial court's order or presume to assess the merits of the decision to transfer. It rests solely on the facial validity (or invalidity) of the order as a transfer based on the UCCJEA at all.

To be clear, I am not suggesting a UCCJEA transfer order must identify the eight factors to be considered, let alone provide a reasoned analysis of them to be legally effective to cede jurisdiction. Nor does it have to recite the parties' positions, if any, on transfer. But a purported transfer order must, at the very least, indicate it has been entered pursuant to the UCCJEA to be effective, since that statutory scheme—common to both states—provides the jurisdictional bridge from one court to the other.

I would find the record inadequate to establish jurisdiction in the Ford County District Court in late 2016 to enter custody orders affecting Bradfield and Urias' daughter. I would vacate the orders for lack of jurisdiction and remand to the Ford County District Court with directions to promptly secure a sufficient transfer of jurisdiction or to dismiss this case.

As to Bradfield's attorney fee request, I would deny the motion because, in my view, this court lacks jurisdiction to consider it. Moreover, in my view, Bradfield should not prevail on this appeal and, therefore, would not be entitled to attorney fees. But I also

20

agree that Bradfield's motion is inadequate for the reasons the majority has stated. I, therefore, concur in that portion of the majority's opinion.