(231 P.3d 576)
No. 101,722

STATE OF KANSAS, *ex rel.* SECRETARY OF SOCIAL AND REHABILITATION SERVICES, ALECIA TAYLOR, and J. L. K., BY AND THROUGH HIS NEXT FRIEND, ALECIA TAYLOR, *Appellants,* v. SHEDRICK J. KIMBREL, SR., *Appellee.*

Opinion filed May 21, 2010.

*Randy M. Barker*, of Kansas Department of SRS Child Support Enforcement, for appellants.

No appearance by appellee.

Before CAPLINGER, P.J., PIERRON and BUSER, JJ.

BUSER, J.: This is an action for child support brought by the State of Kansas *ex rel.* Secretary of Social and Rehabilitation Services, Alecia Taylor (the biological mother of J.L.K.), and J.L.K., by and through Alecia Taylor (collectively referred to as SRS). SRS appeals the district court's decision that Shedrick J. Kimbrel, Sr., is not the father of J.L.K. and is not legally obligated to support the child after genetic testing proved he is not J.L.K.'s biological father. We affirm.

The question presented is whether in an action by SRS for child support a district court may determine, based on genetic testing, that a man who has executed a voluntary acknowledgment of pa-

ternity under K.S.A. 38-1138 is not the biological father of the child and, accordingly, end the father-child relationship and deny a petition for child support. We answer this question affirmatively and, as a result, uphold the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

J.L.K. was born in May 2002. Shortly thereafter, Taylor and Kimbrel acknowledged paternity by executing a document entitled "Paternity Consent Form for Birth Registration." This document comprised seven paragraphs which set forth basic rights and responsibilities of acknowledging paternity. These included:

"An acknowledgment of paternity creates a permanent father and child relationship which can only be ended by court order . . . . A person who wants to revoke the acknowledgment of paternity must file the request with the court before the child is one year old . . . .

"Both the father and the mother are responsible for the care and support of the child. If necessary, this duty may be enforced through legal action such as a child support order . . . .

. . . .

"Each parent has the right to sign or not sign this acknowledgment of paternity."

Kimbrel, who was 23 years old, read and initialed every disclosure paragraph of the document. He then signed his name after the statement: "I have read the disclosure of basic rights and responsibilities of acknowledging paternity . . . and I hereby acknowledge that I am the father of, and consent to the placing of my name as the father on the birth record of [J.L.K.]." As a result, Kimbrel's name was listed on J.L.K.'s birth certificate as his father.

Two years later, on May 28, 2004, SRS filed a petition for child support and served Kimbrel. The petition alleged that SRS had been assigned support rights for J.L.K., that Kimbrel was J.L.K.'s father, and that he owed a duty to support his son. Previously, Kimbrel had never revoked his voluntary acknowledgment of paternity. In response to the lawsuit, however, Kimbrel requested genetic testing to determine the biological paternity of J.L.K. Prior to the hearing on Kimbrel's motion, the district court ordered the appointment of a guardian ad litem for J.L.K.

A hearing was held in accord with *In re Marriage of Ross*, 245 Kan. 591, 783 P.2d 331 (1989). The district court summarized SRS's argument opposing genetic testing: "SRS asserts that genetic testing is not appropriate because [Kimbrel's paternity] acknowledgement became conclusive by respondent's failure to challenge it in a manner mandated by statute. Therefore, the paternity of [Kimbrel] has already been established."

The district court also summarized the positions of the other parties:

"In this case, the mother has testified she is certain [Kimbrel] is the father of the child. However, she does not object to testing. The guardian ad litem believes genetic testing should be done because it may satisfy [Kimbrel's] doubts and encourage him to have a more meaningful relationship with his child."

Ultimately, the district court decided genetic testing was in the best interests of J.L.K. and granted Kimbrel's motion. Subsequent test results showed that Kimbrel was not the biological father of J.L.K.

On March 17, 2006, an administrative hearing officer found that Kimbrel "is not the father of [J.L.K.] by [genetic testing] and does not have to pay child support." SRS sought review by the district court.

On November 14, 2008, the district court issued its order and supporting memorandum. It found that K.S.A. 38-1138(b)(1) provides that an acknowledgment of paternity creates a permanent father and child relationship which may only be terminated by a court order. The district court also found that Kimbrel had not revoked his acknowledgment in a timely manner. The district court ruled, however, that Kimbrel's written acknowledgment of paternity "only creates a *presumption* that paternity is established." (Emphasis added.) Noting that both J.L.K.'s mother and the guardian ad litem favored genetic testing, the district court determined that Kimbrel "was entitled to genetic testing," which revealed a "zero percent chance" that he was the biological father of J.L.K. Accordingly, the district court held that Kimbrel was not "the legal father of the child" and had no duty to support J.L.K.

SRS appeals. Kimbrel did not file a responsive brief.

## Voluntary Acknowledgment of Paternity Pursuant to K.S.A. 38-1138

SRS presents two contentions. First, it argues that Kimbrel's execution of the voluntary acknowledgment of paternity form as provided in K.S.A. 38-1138 did not merely create a rebuttable presumption of paternity, rather it permanently established Kimbrel as J.L.K.'s father, notwithstanding the subsequent genetic testing which proved he was not the biological father. Second, SRS contends Kimbrel was procedurally barred from challenging his voluntary acknowledgment of paternity because the statutory time limits to revoke the acknowledgement had expired.

The facts are not in dispute, and the question presented turns on statutory interpretation. As a result, our standard of review is de novo. See *Reese v. Muret*, 283 Kan. 1, 4, 150 P.3d 309 (2007).

"The fundamental rule of statutory construction is that the intent of the legislature governs. Legislative intent is first determined by considering the language in the statute. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be." *Reese*, 283 Kan. 1, Syl. ¶ 1.

We begin our analysis with a review of the Kansas Parentage Act, K.S.A. 38-1110 *et seq.* (KPA), which governs "[p]roceedings concerning parentage of a child." K.S.A. 38-1110(b). The KPA defines the " 'parent and child relationship' " as "the legal relationship existing between a child and the child's biological or adoptive parents." K.S.A. 38-1111. Setting aside adoption, which is not at issue here, this statutory definition shows a legislative intent to recognize biological lineage as the foundation for the parent-child relationship. This legislative intent is also consistent with our constitutional order. See *In re Adoption of G.L.V.*, 286 Kan. 1034, 1059, 190 P.3d 245 (2008) ("a natural parent's right to raise his or her child is protected to the extent that the parent demonstrates a commitment to his or her parental responsibilities").

The KPA provides for genetic testing "[w]henever the paternity of a child is in issue in any action or judicial proceeding in which the child, mother and alleged father are parties." K.S.A. 38-1118(a). The plain language of this statute is particularly relevant

to the issue on appeal because K.S.A. 38-1118(a) makes specific provision for genetic testing in "action[s] . . . filed by the [SRS] under K.S.A. 39-755 or 39-756." In the present case, SRS brought this child support action against Kimbrel pursuant to these two statutory provisions.

On appeal, SRS does not cite K.S.A. 38-1118(a), perhaps because it does not concede the paternity of J.L.K. is in issue. Generally speaking, however, a party who denies paternity and requests genetic testing has placed paternity "in issue." See Black's Law Dictionary 907 (9th ed. 2009) (issue defined as "A point in dispute between two or more parties.").

The language of K.S.A. 38-1118(a) provides "the court shall order genetic tests" on motion of SRS or "any party to the action." As our Supreme Court indicated in *Reese*: "K.S.A. 38-1118(a) requires the district court to order genetic testing when any party requests genetic testing." 283 Kan. at 6.

Importantly, *Reese v. Muret*, 283 Kan. at 6, states the statutory requirement of genetic testing in K.S.A. 38-1118(a) was "tempered" by the holding of *In re Marriage of Ross*. In *Ross*, our Supreme Court required "the district court to conduct a hearing prior to issuing an order for genetic testing to determine whether genetic testing is in the best interests of the child." *Reese*, 283 Kan. at 6. Our Supreme Court noted in *Reese v. Muret*, 283 Kan. at 10, that there may be other considerations, such as family identity or the right to inherit, which supersede biological lineage ("paternity is both broader and deeper than genetics").

In this case, genetic testing conducted pursuant to K.S.A. 38-1118(a) established that Kimbrel is not J.L.K.'s biological father. Moreover, as a result of the *Ross* hearing, the district court found genetic testing was in J.L.K.'s best interests, and SRS does not contest that finding on appeal. See *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 395, 204 P.3d 562 (2009) (issues not briefed are deemed waived or abandoned). SRS is, therefore, arguing for a parent-child relationship contrary to biological lineage which was established through genetic testing determined to be in the best interests of J.L.K. The question becomes whether the

legislature intended for a voluntary acknowledgment of paternity to have this effect under these circumstances.

The plain language of K.S.A. 38-1114 provides that a voluntary acknowledgment of paternity establishes a *presumption* of paternity: "A man is presumed to be the father of a child if: . . . . [t]he man . . . in writing recognizes paternity of the child, including but not limited to a voluntary acknowledgment made in accordance with K.S.A. . . . 65-2409a, and amendments thereto." K.S.A. 38-1114(a)(4). This presumption, however, is not conclusive because the plain language of the same statute provides the presumption may be rebutted "by clear and convincing evidence." K.S.A. 38-1114(b).

In this case, the district court considered the genetic test results as clear and convincing evidence which proved Kimbrel was not J.L.K.'s biological father. On appeal, SRS does not contest that particular ruling.

We conclude that Kimbrel's voluntary acknowledgment of paternity was made "in accordance with K.S.A. . . . 65-2409a, and amendments thereto" as required by K.S.A. 38-1114(a)(4). In fact, the form Kimbrel executed referenced K.S.A. 65-2409(c) which was the precursor statute to K.S.A. 65-2409a(c). See K.S.A. 65-2409a, Revisor's Note; L. 1990, ch. 226, sec. 2; L. 1990, ch. 227, sec. 2. As a result, we read the citation to K.S.A. 65-2409(c) on Kimbrel's acknowledgment of paternity form as K.S.A. 65-2409a(c).

Beyond the citation on the form, however, it is clear that K.S.A. 65-2409a(c) applies in this case. That statute provides for "written consent . . . of the person to be named as the father on a form provided by the state registrar pursuant to K.S.A. 38-1138" in cases where "the mother was not married either at the time of conception or of birth, or at any time between conception and birth." K.S.A. 65-2409a(c). Thus, the *procedure* for executing the form is controlled by K.S.A. 65-2409a, while the *content* of the form is controlled by K.S.A. 38-1138(b), which sets out the "rights and responsibilities of acknowledging paternity" which must be included in the voluntary acknowledgment of paternity form. The linkage between these two statutes is shown further in K.S.A. 38-

1138(a), which cites back to K.S.A. 65-2409a(c): "The state registrar of vital statistics, in conjunction with the secretary of [SRS], shall review and, as needed, revise acknowledgment of paternity forms for use under K.S.A. . . . 65-2409a, and amendments thereto."

Given that Kimbrel's voluntary acknowledgment of paternity was proper under both K.S.A. 65-2409a(c) and K.S.A. 38-1138(b), we conclude that it created a presumption under K.S.A. 38-1114(a)(4) that Kimbrel was the father of J.L.K.

While SRS concedes that Kimbrel's acknowledgment of paternity conformed to K.S.A. 38-1138(b), it counters that the provisions of K.S.A. 38-1138(d) suggest that no presumption of paternity was created by the execution of that document. SRS bases its assertion on the following language from that statute: "An acknowledgment of paternity completed without the written disclosures of subsection (b) [of K.S.A. 38-1138] is not invalid solely for that reason and may create a presumption of paternity pursuant to K.S.A. 38-1114 and amendments thereto."

Of course, Kimbrel's acknowledgment of paternity included all of the requisite written disclosures. But SRS would have us infer that *only* those acknowledgments of paternity which *fail to conform* to K.S.A. 38-1138(b) may create a presumption. SRS contends an acknowledgment of paternity which *conforms* to K.S.A. 38-1138(b), as in Kimbrel's case, does something more than establish a presumption— it *"establishes"* a *"permanent* father and child relationship."

We read K.S.A. 38-1138(d) differently than SRS: The fact that a voluntary acknowledgment of paternity not made in accordance with K.S.A. 65-2409a may create a presumption of paternity proves only that a nonconforming acknowledgment may *or* may not create a presumption. As a result, a question would remain whether the man, by executing the writing in question, "recognizes paternity of the child." K.S.A. 38-1114(a)(4). But under the plain language of K.S.A. 38-1114(a)(4), if a voluntary acknowledgment of paternity *is* made in accordance with K.S.A. 65-2409a, it creates a presumption as a matter of law. Only when a voluntary acknowledgment of

paternity is revoked under the provisions of K.S.A. 38-1115(e), does it not create a presumption as a matter of law.

In support of its contention that a voluntary acknowledgment of paternity "establishes" a "permanent" father-child relationship, SRS cites two statutes, K.S.A. 38-1113(b) and K.S.A. 38-1138(a).

The first statute, K.S.A. 38-1113(b), provides: "The father may be established under this act or, in the absence of a final judgment establishing paternity, by a voluntary acknowledgment of paternity meeting the requirements of K.S.A. 38-1138 . . . , unless the voluntary acknowledgment has been revoked pursuant to K.S.A. 38-1115." K.S.A. 38-1113(b).

We agree with SRS that Kimbrel was established as the father of J.L.K. under this provision. That does not end the analysis in support actions, however. If it did, the legislature would not have included voluntary acknowledgments of paternity in the list of rebuttable presumptions at K.S.A. 38-1114, not to mention providing for genetic testing under K.S.A. 38-1118.

The second statute, K.S.A. 38-1138(b)(1), states: "An acknowledgment of paternity creates a permanent father and child relationship which can only be ended by court order." The key here, of course, is that the relationship is permanent unless undone by a court. We see this as a parallel to K.S.A. 38-1113(b). The legislature clearly intended that a voluntary acknowledgment of paternity, standing alone, would establish a permanent father-child relationship without the need for a paternity action. Nevertheless, that relationship is subject to termination by a court because paternity is a rebuttable presumption under K.S.A. 38-1114.

Finally, SRS argues that Kimbrel is bound by his voluntary acknowledgment of paternity because he did not bring an action to revoke it within the time limits set out in K.S.A. 38-1115(e). In this case, the statute required Kimbrel to bring an action to revoke the acknowledgment of paternity within 1 year after J.L.K.'s birth. See K.S.A. 38-1115(e). Here, J.L.K. was 2 years old before Kimbrel sought genetic testing to contest paternity. In the view of SRS, "[i]f the acknowledgment is not revoked at court within the statutory time frame, it becomes 'permanent' as to that individual and he is

then barred under K.S.A. 38-1115(e) from challenging the voluntary acknowledgment of paternity."

But K.S.A. 38-1138(b)(1) does not state the father and child relationship is permanent only after the time limits at K.S.A. 38-1115(e) have expired. It states the acknowledgment of paternity itself "creates a permanent father and child relationship," and this "permanent" relationship may then be ended by court order. K.S.A. 38-1138(b)(1). Given the plain language of K.S.A. 38-1114, the district court's order in the present case was one such example anticipated by the statutory language.

This does not render the time limits meaningless. The legislature added the reference to voluntary acknowledgments of paternity in K.S.A. 38-1114(a)(4) in the same act which imposed the time limits on actions to revoke voluntary acknowledgments of paternity in K.S.A. 38-1115(e). L. 1994, ch. 292, secs. 5-6. The amendments were also enacted after *Ross*. See *Frick v. City of Salina*, 289 Kan. 1, 23, 208 P.3d 739 (2009) ("courts presume the legislature acts with knowledge of existing statutory and case law when it enacts legislation").

Reading the amended statutes together in light of *Ross*, we reach the following conclusions: First, when a man executes a voluntary acknowledgment of paternity under K.S.A. 38-1138 a presumption of paternity arises and he is established in a permanent father-child relationship. Second, if a man successfully brings a timely action under K.S.A. 38-1115(e) to revoke his voluntary acknowledgment of paternity, the presumption of paternity ends by court order and he is no longer established in the permanent father-child relationship. Third, if a man does not successfully bring such a timely action, the presumption of paternity remains along with the established father-child relationship, and it is subject to challenge by genetic testing only where permitted by K.S.A. 38-1118(a) and *Ross*. Finally, if a district court determines, based on genetic testing ordered pursuant to K.S.A. 38-1118(a) and *Ross*, that clear and convincing evidence proves a man who has executed a voluntary acknowledgment of paternity under K.S.A. 38-1138 is not the biological father of the child, the court may find the presumption of

paternity is rebutted, end the father-child relationship, and deny a petition for child support.

Where, as here, the best interests of the child were served by genetic testing, the district court did not err in allowing the testing, considering the results, ending the father-child relationship, and denying the petition for child support.

Affirmed.