No. 118,982

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

FRANKLIN JAMES OSBORN, as Heir at Law of A.O., Deceased,
*Appellant*,

v.

ANTHONY MICHAEL ANDERSON, KEIRA DAWN OSBORN,
KANSAS DEPARTMENT FOR CHILDREN AND FAMILIES, and
PHYLLIS GILMORE, in her Official Capacity as Secretary,
*Appellees*.

SYLLABUS BY THE COURT

1.

Interpretation of a statute is a question of law over which appellate courts have unlimited review.

2.

The Kansas Constitution imposes a case-or-controversy requirement for every civil action. Part of that requirement, and a component of subject matter jurisdiction, is standing. Standing concerns a litigant's ability to seek a judicial remedy or to seek judicial enforcement of a right or duty.

3.

If a statute provides the basis for asserting a right to seek a judicial remedy, a multilevel analysis applies to the determination of standing: Courts analyze standing, first, as a matter of statute and, second, as a matter of common law. To meet the common-law requirement, the party seeking to establish standing must establish a sufficient stake in the outcome to obtain judicial resolution of the controversy. Meeting only one prong or the other is insufficient; both prongs must be satisfied.

1

4.

Under the Kansas Parentage Act, an acknowledgement of paternity creates a permanent father and child relationship which can only be ended by court order.

Appeal from Bourbon District Court; MARK ALAN WARD, judge. Opinion filed October 19, 2018. Reversed and remanded.

*Michaela Shelton*, of Shelton Law Office, P.A., of Overland Park, for appellant.

*Corliss Scroggins Lawson*, general counsel's office, Kansas Department for Children and Families, for appellees Kansas Department for Children and Families and Phyllis Gilmore.

Before LEBEN, P.J., GREEN and MALONE, JJ.

MALONE, J.: Franklin James Osborn appeals the district court's summary judgment in favor of the defendants, dismissing Osborn's lawsuit for lack of standing. In 2014, Osborn signed a voluntary acknowledgment of paternity (VAP) form naming him the father of A.O. But it is undisputed that Osborn is not A.O.'s biological father. Osborn and A.O.'s mother briefly married, but the marriage was annulled. Sadly, A.O. later died while in the care of the mother's boyfriend. Osborn filed a wrongful death action against the defendants which the district court dismissed for lack of standing, finding that Osborn is not A.O.'s heir-at-law. This case calls on us to decide whether Osborn is A.O.'s father in the eyes of the law. Because we find that he is, we reverse the district court's judgment and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

On October 14, 2014, Keira Ripple (formerly Keira Osborn) gave birth to A.O. Keira was not married when she gave birth, and she was unsure who was A.O.'s father.

2

But Keira was sure that Osborn was not the father, and Osborn admits he is not A.O.'s biological father. Keira was already pregnant when she first met Osborn in April 2014.

Soon after meeting, Keira and Osborn decided that Osborn would be A.O.'s father. On October 15, 2014, the day after A.O. was born, Osborn and Keira signed a VAP form, labeled as a "Paternity Consent Form for Birth Registration." The VAP form specified that "[a]n acknowledgement of paternity creates a permanent father and child relationship which can only be ended by court order." The VAP form also explained the rights and responsibilities of the father and the mother whose signatures appeared on the form. Finally, the VAP form expressly stated: "The father or the mother may inherit from the child or the child's descendants." Osborn and Keira also named Osborn as A.O.'s father on the birth certificate. The VAP form and the birth certificate were filed—and remain on file—with the Office of Vital Statistics of the Kansas Department of Health and Environment.

On October 27, 2014, a couple weeks after A.O.'s birth, Keira and Osborn married, but the marriage quickly deteriorated. Keira filed a petition for annulment which alleged that "no children have been born of this marriage or adopted by the parties." As grounds for requesting an annulment, Keira alleged in the petition that Osborn "failed to advise [Keira] prior to the marriage that he is unable to father children." Keira testified that Osborn was present in the attorney's office when she signed the annulment petition and he never objected to any statements in the petition. Court records show that a waiver of service of summons was filed and the district court granted the annulment on February 25, 2015, although the annulment order is not included in the record on appeal.

After the marriage ended, Keira and A.O. began residing with Keira's new boyfriend, Anthony Anderson. While Keira and Anderson lived together, the Kansas Department for Children and Families (DCF) received at least one "hotline" report that

3

A.O. was being neglected or abused under Keira's care. The DCF investigated but took no formal action to remove A.O. from Keira's care.

On April 28, 2015, Keira asked Anderson to look after A.O. while she worked. During that time, Anderson killed A.O., the circumstances of which are unclear from the record but are described in *State v. Anderson*, 308 Kan. ___, No. 116,710, 2018 WL 4841556 (October 5, 2018). Anderson is presently incarcerated at the El Dorado facility of the Kansas Department of Corrections.

On April 25, 2017, Osborn filed a petition for wrongful death against Anderson, Keira, the DCF, and Phyllis Gilmore in her official capacity as secretary of the DCF. Osborn alleged that the defendants were all partially at fault for A.O.'s death. The record does not reflect that Anderson ever responded to the petition.

Keira filed her answer on May 17, 2017, and she attached a copy of the annulment petition to her answer. The DCF, also representing Gilmore, filed its answer on May 26, 2017. The DCF and Keira later filed separate amended answers on June 9, 2017. That same day, the defendants, minus Anderson, filed a joint motion to dismiss or, in the alternative, a motion for summary judgment. The motion argued that Osborn lacked standing to sue for wrongful death because he was not A.O.'s biological father and the annulment revoked the VAP. The motion also included a claim of equitable estoppel based on Osborn's failure to inform the court granting the annulment that he was A.O.'s legal father and his failure to accept the legal responsibilities of being a parent.

Osborn responded to the summary judgment motion on July 10, 2017. In his response to the motion, Osborn argued that the annulment did not invalidate the VAP and, because he was still A.O.'s legal father, he had standing to bring the claim. Osborn attached a signed copy of the VAP to his response. The response also included an affidavit signed by Osborn acknowledging, "I am not the biological father of A.O."

The district court held a hearing on the motion on July 21, 2017. In addition to oral arguments, Keira testified at the hearing. All parties at the hearing agreed that the motion was before the court "in the form of a summary judgment motion."

On July 26, 2017, the district court filed an order granting summary judgment for the defendants, dismissing Osborn's lawsuit for lack of standing. The district court found there was no genuine issue as to any material fact related to the subject of the motion. The district court found that the VAP created merely a presumption of paternity, and it ruled that the presumption was rebutted by the undisputed fact that Osborn was not A.O.'s biological father. The court based its ruling on *State ex rel. Secretary of SRS v. Kimbrel*, 43 Kan. App. 2d 790, 231 P.3d 576 (2010).

Osborn later filed a "Motion for New Trial Under K.S.A. 60-259." In the motion, Osborn brought a new Kansas case to the district court's attention: *State ex rel. Secretary of DCF v. Smith*, 306 Kan. 40, 392 P.3d 68 (2017). Osborn claimed that according to the *Smith* decision, *Kimbrel* was no longer good law and the defendants were time-barred from trying to revoke the VAP. The defendants disputed Osborn's claims, and a hearing on the matter took place on December 13, 2017.

On February 13, 2018, the district court filed an order reaffirming its previous summary judgment in favor of the defendants, expressly incorporating its prior reasoning plus adding a new reason. For its new reasoning, the district court found that the 2015 marriage annulment "revoked" or terminated the VAP because of the assertion in the annulment petition that no children resulted from the marriage. The district court dismissed Osborn's lawsuit with prejudice for lack of standing. Osborn timely appealed.

ANALYSIS

On appeal, Osborn claims the district court erred in granting summary judgment in favor of the defendants. Osborn claims that he has standing to bring a wrongful death lawsuit because he is A.O.'s legal father according to the VAP. Specifically, Osborn contends that the district court erred by finding that the annulment terminated the VAP.

The DCF asserts that the district court did not err by finding, by clear and convincing evidence, that the presumption of paternity in favor of Osborn was revoked. The DCF asserts that the annulment invalidated the VAP and that the district court could nullify the VAP based on the uncontroverted fact that Osborn is not A.O.'s biological father. Keira has not filed an appellate brief.

> """Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citations omitted.]""" *Armstrong v. Bromley Quarry & Asphalt, Inc.*, 305 Kan. 16, 24, 378 P.3d 1090 (2016).

Also, this case involves interpretation of the Kansas Parentage Act (the Act), K.S.A. 2017 Supp. 23-2201 et seq. Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Neighbor v. Westar Energy, Inc.,* 301 Kan. 916, 918, 349 P.3d 469 (2015).

Under K.S.A. 60-1902, an heir-at-law may maintain a wrongful death cause of action against an alleged wrongdoer. An heir-at-law refers to one who takes property by intestate succession. *Baugh v. Baugh*, 25 Kan. App. 2d 871, 874, 973 P.2d 202 (1999) (quoting *Johnson v. McArthur*, 226 Kan. 128, 134, 596 P.2d 148 [1979]). Under Kansas intestate law, when the decedent leaves no spouse, child, or issue (as with A.O. here), the surviving parents are the child's heirs-at-law. K.S.A. 59-507.

The Kansas Constitution imposes a case-or-controversy requirement for every civil action. *In re Adoption of T.M.M.H.*, 307 Kan. 902, 908, 416 P.3d 999 (2018). Part of that requirement, and a component of subject matter jurisdiction, is standing. 307 Kan. at 908. Standing concerns a litigant's ability to seek a judicial remedy or to seek judicial enforcement of a right or duty. 307 Kan. at 908.

> "If a statute provides the basis for asserting a right to seek a judicial remedy, a multilevel analysis applies to the determination of standing: First, courts analyze standing as a matter of statute and, second, as a matter of common law. To meet the common-law requirement, the party seeking to establish standing must establish a sufficient stake in the outcome to obtain judicial resolution of the controversy. Meeting only one prong or the other is insufficient; both prongs must be established." *In re Adoption of T.M.M.H.*, 307 Kan. 902, Syl. ¶ 2.

Here, the defendants challenge the statutory element of standing and assert that Osborn is not A.O.'s heir-at-law under K.S.A. 60-1902. This statute requires Osborn to be an heir-at-law to bring a wrongful death suit. So if Osborn is not A.O.'s legal father, he lacks standing under K.S.A. 60-1902. But if Osborn establishes that he is A.O.'s legal father, he has standing to file the wrongful death action.

We begin our analysis by stating the obvious: This case is not a paternity action brought under the Kansas Parentage Act nor is it an action brought by the DCF for the enforcement of child support. This case is a lawsuit filed by Osborn against Keira and the

DCF for the wrongful death of A.O. The only issue is whether Osborn has standing to bring this action. But to resolve this issue, we must apply the standards of the Kansas Parentage Act to this civil tort claim to decide whether Osborn is A.O.'s legal father.

*The 2015 marriage annulment did not terminate the VAP.*

The district court found that the 2015 marriage annulment terminated the VAP because of the assertion in the annulment petition that no children resulted from the marriage. But an annulment only sets aside a marriage. See *In re Marriage of Kidane & Araya*, 53 Kan. App. 2d 341, 345, 389 P.3d 212 (2017) (recognizing that an annulment is a judicial determination to set aside a marriage). The DCF cites no legal authority to support the proposition that the annulment herein invalidated the VAP.

The closest case we can find on point is *In re Paternity of Janzen*, 43 Kan. App. 2d 613, 228 P.3d 425 (2010), although the question in that case was whether a divorce decree, as opposed to an annulment, rebutted the presumption of paternity under the Act. Jessica Janzen was born on October 20, 1988. Her mother, Diana Williams, and Kenneth Janzen were married when Jessica was born, and Kenneth was named as Jessica's father on her birth certificate. In 1989, Kenneth and Diana divorced, and they entered into a separation agreement which recited that Kenneth was not Jessica's father. Ultimately, the district court approved their agreement and granted a divorce.

A few days after her 18th birthday, Jessica filed a petition under the Kansas Parentage Act, seeking a judicial determination of her parentage and a court order for support and reimbursement of expenses. Kenneth denied that he was Jessica's father and, in turn, sought damages from Diana for misrepresenting that he was Jessica's father. Based on genetic testing, the district court found that Kenneth was Jessica's father, and the district court awarded retroactive child support as reimbursement of expenses.

8

On appeal, Kenneth argued that the divorce decree rebutted the statutory presumption of paternity found in the Kansas Parentage Act. This court rejected Kenneth's argument, finding that "we are not persuaded that the divorce decree rebuts the paternity presumption under K.S.A. 38-1114(b). While it is a court decree, it does not establish paternity in another man as it is set out in the statute." 43 Kan. App. 2d at 616. This court concluded that the district court properly ignored the 1989 divorce decree when deciding Jessica's paternity. 43 Kan. App. 2d at 616.

Here, the petition for annulment alleged that "no children have been born of this marriage or adopted by the parties." But the petition did not mention the VAP, and it made no claim that either party was trying to revoke or cancel the VAP. The Kansas Parentage Act contemplates that a separate action is needed to revoke or cancel a VAP. This finding is evident by the plain language of the Act, which specifically requires parties to bring an action to revoke a VAP, and because the Act allows an action to revoke a VAP to be joined with an action for divorce or annulment. See K.S.A. 2017 Supp. 23-2204(b)(1); K.S.A. 2017 Supp. 23-2209(e); K.S.A. 2017 Supp. 23-2210(a). Although Keira or Osborn could have brought a separate action to revoke or cancel the VAP and joined that action with the annulment proceeding, there is no record that they did so. The order granting the annulment is not included in the record on appeal, but no party is asserting that the order expressly revoked or cancelled the VAP.

The DCF argues that Osborn is bound by the contents of the annulment petition because he failed to contest them. The DCF also argues that Osborn's failure to inform the court granting the annulment that he was A.O.'s legal father served to revoke the VAP. But even if Keira or Osborn misrepresented facts to the district court in the annulment proceeding, the misrepresentation would only serve to void the order of annulment, not the VAP. For these reasons, we conclude that the 2015 marriage annulment did not terminate the VAP, and the district court erred in finding otherwise.

9

*Keira is time-barred from revoking the VAP.*

The district court also found that the VAP created merely a presumption of paternity, and it ruled that the presumption was rebutted by the undisputed fact that Osborn was not A.O.'s biological father. The district court did not specify which party rebutted the presumption, but it presumably found that Keira and the DCF both rebutted the presumption of paternity.

The district court based its ruling on *Kimbrel*, 43 Kan. App. 2d 790. In that case, J.L.K. was born in 2002 and Shedrick Kimbrel signed a VAP acknowledging paternity. He was also named as the father on the birth certificate. Two years later, the Secretary of Social and Rehabilitation Services (SRS), now known as the DCF, filed a petition for child support. In response, Kimbrel requested genetic testing to show that he was not the biological father. The district court decided that genetic testing was in J.L.K.'s best interests and granted Kimbrel's motion. Based on the genetic testing, the district court found that Kimbrel was not "'the legal father of the child'" and had no duty to support J.L.K. 43 Kan. App. 2d at 792.

On appeal, this court found that in an action brought by the SRS for child support, a district court may determine based on genetic testing and in the best interests of the child that a man who has executed a VAP is not the biological father of the child. 43 Kan. App. 2d at 798. This court affirmed the district court's decision that the presumption of paternity was rebutted, that the court should end the father and child relationship, and that Kimbrel had no duty to support the child. 43 Kan. App. 2d at 798-99.

But as Osborn pointed out in district court, *Kimbrel* is no longer good law to the extent that it failed to recognize the statutory time limitation for an individual who has signed a VAP to seek to revoke the agreement. In *Smith*, the SRS filed a petition for child support against Alonzo Smith in 2009. Neither Smith, the child's mother, nor anyone else

10

had ever asserted that Smith was the child's biological father. But Smith had signed a VAP in the hospital soon after the child's birth in 2000, and the VAP served as the sole basis for the State's child support claim.

Smith testified that he had agreed that the child could have his last name as a favor to the mother; the mother testified that the biological father was a gang member and she did not want him in the child's life. There was an understanding between Smith and the mother that Smith would never have to pay child support. Neither Smith nor the mother actually remembered signing the VAP, but they acknowledged their signatures on the document. Despite this evidence, the district court ruled that Smith was the legal father based on the VAP which had never been revoked in a timely manner and ordered Smith to pay child support.

The Court of Appeals reversed the district court, finding that the VAP created only a presumption of paternity which was rebutted by the evidence at the hearing. *Smith*, 306 Kan. at 45. On review, our Supreme Court noted that under K.S.A. 2016 Supp. 23-2204(b)(1), a VAP "'creates a permanent father and child relationship,'" but under K.S.A. 2016 Supp. 23-2208, a VAP merely establishes a rebuttable presumption of paternity. 306 Kan. at 41. The court construed the ambiguous statutes and held that "individuals who sign a VAP are bound by the rights and responsibilities delineated in K.S.A. 2016 Supp. 23-2204, including the creation of a permanent father and child relationship, if the VAP is not revoked by court order within 1 year of the child's birth." 306 Kan. at 41. Because Smith had not revoked the VAP in a timely manner as required by the Kansas Parentage Act, the court ruled that the VAP established a permanent father and child relationship and that Smith was responsible for financially supporting the child. 306 Kan. at 41-42.

The court's holding in *Smith* was based on the plain language of the Kansas Parentage Act. K.S.A. 2017 Supp. 23-2204(b)(1) states that "[a]n acknowledgement of

11

paternity creates a permanent father and child relationship which can only be ended by court order." The Act also states that a man is presumed to be the father of a child if the man and the child's mother marry or attempt to marry after the child's birth and "[t]he man has acknowledged paternity of the child in writing" or "with the man's consent, the man is named as the child's father on the child's birth certificate." K.S.A. 2017 Supp. 23-2208(a)(3)(A)-(B). Finally, K.S.A. 2017 Supp. 23-2209(e) states that "if an acknowledgement of paternity pursuant to K.S.A. 2017 Supp. 23-2204, and amendments thereto, has been completed the man named as the father, the mother or the child may bring an action to revoke the acknowledgement of paternity at any time *until one year after the child's date of birth*." (Emphasis added.)

Here, as we have noted before, no party has ever filed a separate action seeking to revoke or terminate the VAP executed by Keira and Osborn on October 15, 2014. Under K.S.A. 2017 Supp. 23-2209(e), and as held by our Supreme Court in *Smith*, Keira is now time-barred from bringing such an action. Even if the district court's order dismissing this wrongful death action can be construed as a court order terminating the VAP, the wrongful death action was not filed until more than two years after A.O.'s birth.

The DCF points out, and the district court found, that Keira filed the annulment petition within one year of A.O.'s birth. Thus, the DCF argues that Keira met her statutory deadline to try to revoke or cancel the VAP. But for reasons we have already stated, the annulment dissolved only the marriage and had no effect on the VAP. Thus, under the provisions of the Kansas Parentage Act, we conclude that Keira is time-barred from trying to revoke the father and child relationship created by the VAP in order to defeat Osborn's standing to file this wrongful death action.

12

*The DCF lacks a statutory basis to challenge Osborn's paternity under the Act.*

In *Smith*, the SRS essentially argued that the VAP trumped genetics, and the agency sought child support from Smith based on the VAP even though the evidence was undisputed that he was not the child's biological father. Here, the DCF wants to have it the other way, as the agency argues that the district court correctly found that "the presumption of paternity was revoked and, therefore, [Osborn] is not an heir or heir at law of A.O. and does not have standing to bring this wrongful death action."

As the DCF points out, the Act's one-year time limitation to revoke the VAP in this case applies only to those who signed the VAP. Although K.S.A. 2017 Supp. 23-2209(e) creates a one-year time bar for Keira to revoke the VAP, this subsection provides no time limitation for the DCF to challenge Osborn's paternity. That said, the DCF fails to provide this court with any statutory basis for the agency to challenge Osborn's paternity under the Act in order to defeat his standing to bring the wrongful death action.

The DCF typically invokes the provisions of the Act in order to bring an action to enforce child support against an alleged father. K.S.A. 2017 Supp. 23-2209(b) expressly authorizes the DCF, in an attempt to enforce child support, to "bring an action at any time during a child's minority to determine the existence of the father and child relationship." But this case is not a child support action, and the DCF does not argue that the court has authority to determine Osborn's paternity under this subsection of the Act.

The only other provision that could provide the court with authority to determine Osborn's paternity under the Act is K.S.A. 2017 Supp. 23-2209(a)(1), which provides that a child "or any person on behalf of such a child" may bring an action at any time to determine the existence of a father and child relationship presumed under the Act. This subsection might apply if A.O. was in DCF custody and the agency was seeking to bring a paternity action on A.O.'s behalf. But we cannot reasonably find that the DCF is acting

13

on behalf of A.O. in Osborn's wrongful death action. The DCF's *real* interest here is to defeat Osborn's wrongful death claim against the agency. Thus, we conclude that K.S.A. 2017 Supp. 23-2209(a)(1) does not provide the DCF with a statutory basis to challenge Osborn's paternity under the Act.

To begin to sum up, Osborn and Keira signed a VAP on October 15, 2014, acknowledging that Osborn was A.O.'s father. Osborn is also named as the father on A.O.'s birth certificate. The VAP form and the birth certificate were filed—and remain on file—with the Office of Vital Statistics of the Kansas Department of Health and Environment. When a man and a mother sign a VAP they agree and acknowledge that the document creates a "permanent father and child relationship" which can only be ended by court order. K.S.A. 2017 Supp. 23-2204(b)(1); *Smith*, 306 Kan. at 58. To be clear, the VAP creates a permanent father and child relationship regardless of whether the man is or believes himself to be the biological father. 306 Kan. at 56.

Here, the parties' marriage annulment did not revoke or terminate the VAP. Although Osborn's presumption of paternity is subject to being rebutted, there has never been a separate action filed by any party under the Kansas Parentage Act to revoke or cancel the VAP. Keira is now time-barred from trying to bring such an action. Likewise, the DCF lacks a statutory basis to challenge Osborn's paternity under the Act, at least in the context of Osborn's wrongful death action.

Osborn is A.O.'s father in the eyes of the law. The VAP signed by the parties and filed of record expressly provides that "[t]he father or the mother may inherit from the child or the child's descendants." Accordingly, Osborn is A.O.'s heir-at-law and can maintain a wrongful death cause of action under K.S.A. 60-1902. Thus, we conclude the district court erred in dismissing Osborn's lawsuit for lack of standing.

Reversed and remanded.

14